Vincent RYAN and the Atlantic Inn, Inc.

v.

ZONING BOARD OF REVIEW OF the
TOWN OF NEW SHOREHAM
et al.

Robert D. COSTELLO et al. and The
Town of New Shoreham et al.

v.

ZONING BOARD OF REVIEW, TOWN
OF NEW SHOREHAM et al. and
Atlantic Inn, Inc.

No. 93–427–MP.

Supreme Court of Rhode Island.

March 31, 1995.

Lauren Jones, Jones Associates, Stephen A. Gordon, Abrams & Verri, Providence, and John S. Pfarr, Block Island, for plaintiffs.

Elliot Taubman, Block Island, for defendants.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the petition of Vincent Ryan (Ryan) and the Atlantic Inn, Inc. (Atlantic Inn) for certiorari to review and reverse four orders entered in the Superior Court in two related cases, *Ryan et al. v. Zoning Board of Review of the Town of New Shoreham, et al.,* case No. WC 89–539 (WC 89–539), and *Costello et al. v. Zoning Board of Review of the Town of New Shoreham et al.,* case No. WC 86–170 (WC 86–170). For the reasons stated below, we grant the petition. The facts and procedural history insofar as pertinent to the petition follow.

In 1981, Ryan purchased the Homestead at 615 Corn Neck Road in New Shoreham, Block Island, Rhode Island, designated as plat No. 4, lot No. 7–1, on the town's tax assessor's map. The Homestead is a two-story historic building on approximately two acres of land with a frontage of 340 feet, and an average depth of 250 feet. The footprint of the building covers 1,188 square feet. By 1985, Ryan used the Homestead as housing for employees and for overflow guests of the Atlantic Inn, a New Shoreham hotel owned by Ryan. The land and the original Homestead building had been owned and occupied by the R.W. Anderson family since approximately 1940 and constituted a single-family, seasonal residence, although occasionally a few rooms in the front of the house were used to accommodate overflow guests from a boarding house across the street. For a few summers in the 1970s, the Homestead was rented to family vacationers, and one summer a tenant sublet rooms to several summer employees.

After zoning was instituted in New Shoreham in 1967, plat No. 4, lot No. 7–1 was designated as a Residence Zone A, which did not permit the use of the property as a rooming house or hotel. When Ryan purchased the Homestead in 1981, he was apparently led by a real estate agent to believe that the building was a "rooming house." From 1982 until 1985, rooming house licenses were issued for the Homestead, and it was taxed as a rooming house in the year 1982 and from 1985 to 1988.

On July 30, 1985, the minimum-housing inspector for the town of New Shoreham issued a notice of violation to Ryan, stating that the Homestead failed to meet various requirements of the Rhode Island Housing Code. The letter of notice described the Homestead as a rooming house or hotel containing nine bedrooms and a caretaker's apartment that included two bedrooms. The notice stated that a rooming house or hotel was not a permitted use in a Residence Zone A, within which the Homestead was located. Finally, the inspector noted that before a rooming-house license could be issued, Ryan would have to obtain a variance or special exception from the New Shoreham Zoning Board of Review (the zoning board or board) or, alternately, establish the existence of a nonconforming use of eleven rooms prior to the enactment of the zoning code in 1967.

Ryan responded by filing an application for exception or variance under the zoning ordinance. In his application Ryan requested a variance to renovate the Homestead, including raising the roof at the rear of the building and upgrading the plumbing and wiring. Ryan's application to the zoning board stated that he was requesting the "[e]xpansion of [the][p]re-existing, non-conforming use," as well as a "[s]ideline variance on [the] south side of [the Homestead]," and gave as the reason for the variance his wish to correct the violations for which the house was cited.

The zoning board, at its meeting of January 27, 1986, voted to approve the variance. In a letter to Ryan dated February 6, 1986, the board stated:

"Considering the fact that your proposal is in response to requirements set by the Minimum Housing Inspector and that the structure is intended for employee housing only, the Board voted to approve the variance. The vote was four to one, with Chairman Ball dissenting."

No appeal was taken from this decision. The matter was far from resolved, however, as evidenced by the present action some nine years later. On February 4, 1986, the building inspector for the town of New Shoreham, let it be known that not all the property owners within 200 feet had received notice of Ryan's application for a variance. According to the building inspector, the failure to notify all abutting property owners made the zoning board's decision to grant Ryan's expansion of a pre-existing, nonconforming use, side-line variance an invalid decision. The failure to notify meant that the variance had not been validly granted.

On March 7, 1986, the zoning board mailed Ryan a copy of a public notice, informing him that a hearing, arranged apparently *sua sponte*, was scheduled for March 24, 1986. At that hearing, Ryan presented from the abutter not originally notified, a waiver of notice of the January 27, 1986 meeting. The zoning board then voted to uphold the prior decision. One of the members, however, abstained from voting.

On April 14, 1986, Robert D. Costello, Clifford R. McGinnes, Sr. and Marjorie C. McGinnes, abutters within 200 feet of the Homestead, appealed to Superior Court the March 24, 1986 approval of the variance by the zoning board (No. WC 86–170). The complaint named only the zoning board as defendant. On May 12, 1986, the abutters made an amendment to include Ryan in the body of the complaint. The Atlantic Inn moved to dismiss on May 23, 1986, arguing a lack of subject-matter jurisdiction and insuf-

ficiency of process and service. Ryan filed a separate motion to dismiss, claiming lack of subject-matter jurisdiction and claiming that the complaint failed to join an indispensable party.[1]

On January 19, 1988, the trial justice denied Ryan's motion to dismiss and also ruled that the January 27, 1986 hearing of the zoning board was invalid because the notice requirements had not been met.

On March 8, 1988, the trial justice, in deciding the merits of the abutters' appeal, held that because the one member at the March 24, 1986 meeting had abstained, the requirement that the zoning board be composed of five members had not been met. *See* G.L.1956 (1980 Reenactment) § 45–24–14. The trial justice therefore quashed the decision of the zoning board and remanded the case to the board. On April 29, 1988, Ryan's motion to reconsider the reversal was granted, but once again Ryan's motion to dismiss was denied.

Meanwhile, Ryan applied for building permits for the Homestead in 1986 and 1987, and both were denied by the building inspector. Ryan then filed an appeal of the building inspector's 1987 decision with the zoning board which ruled in Ryan's favor and issued a permit. Ryan went forward with the renovations in the summer of 1987. In August 1988, the Superior Court remanded the abutters' case to the zoning board, which because of its changed membership required a hearing *de novo*. *See Coderre v. Zoning Board of Review of Pawtucket*, 103 R.I. 575, 577–78, 239 A.2d 729, 730 (1968).

On December 1, 1988, the building inspector of the town of New Shoreham, citing the Superior Court action, issued a cease-and-desist order to Ryan for all use of the addition and revoked his Certificate of Use and Occupancy. Ryan appealed this order to the zoning board. In a letter dated August 23, 1989, the zoning board informed Ryan that it had held a public hearing both on Ryan's

---

1. According to the brief submitted by Ryan and the Atlantic Inn, Ryan was the sole owner of the Homestead until April 22, 1986, when the real estate was transferred to the Atlantic Inn. The date of this transfer was supported by the amended complaint (WC 86–170) filed by the abutters. Therefore, in this opinion reference to Ryan in respect to events occurring after the transfer of title should be understood to refer to Ryan and the Atlantic Inn.

request for a side-line variance and on his appeal of the December 1, 1988 cease-and-desist order. The zoning board informed Ryan that his application for a variance had been denied as had his appeal of the cease-and-desist order.

Ryan appealed these decisions on August 30, 1989 (No. WC 89–539). On June 23, 1992, while the appeal was pending in Superior Court, the New Shoreham building official issued a Notice of Violation to Atlantic Inn for operating the Homestead as a rooming house in a Residential A Zone. Ryan appealed the notice to the zoning board. On October 15, 1992, the zoning board upheld Ryan's appeal from the building official's notice of violation, on the basis of a finding that the use of the building as a rooming house was a pre-existing, nonconforming use. No appeal was taken from this decision.

On December 2, 1992, No. WC 89–539 was transferred from the Washington County to the Providence County Superior Court where, on January 12, 1993, Ryan's appeal was denied. On February 12, 1993, Ryan filed motions for a new trial, for relief from judgment, for reconsideration, for permission to reargue, and for a stay of judgment, all of which were denied on June 21, 1993. Ryan subsequently petitioned this court to review both appeals.

### ANALYSIS

Ryan alleged thirteen errors in the two proceedings in Superior Court. Because we concur with his first specification of error, we refrain from addressing the remaining putative errors.

■ Ryan contended that the Washington County trial justice erred by denying his motion to dismiss presented in WC 86–170, and he asserted that the zoning board had erred by rehearing its January 27, 1986 decision to grant Ryan's application for a variance. Ryan argued that the unappealed grant of a variance was a final decision, subject to nullification only by an interested party who had not received proper notice. Because no such party appeared, Ryan reasoned, the zoning board erred in rehearing the application *sua sponte.* We agree.

The initial zoning board decision that granted Ryan's application for a variance was made at its meeting of January 27, 1986, and a decision letter was issued to Ryan on February 6, 1986. No appeal was taken from that decision within the statutory period prescribed by § 45–24–20. The statute provides that "[a]ny person * * * aggrieved by a decision of the zoning board may appeal to the superior court * * * by filing a complaint * * * within twenty (20) days after such decision has been filed in the office of the zoning board." Ryan maintained that the appeal that was filed April 14, 1986, derived from the *March 24, 1986* meeting of the zoning board, and was filed more than twenty days after the deadline for appeal. Therefore, he argued, the Superior Court lacked subject-matter jurisdiction over the appeal. The trial justice, however, held that notice was mandatory and that the January 27, 1986 hearing was invalid because proper notice had not been given to *one* abutter.

■ On certiorari this court reviews the record to determine whether legally competent evidence supports the findings of the tribunal below. *Zeilstra v. Barrington Zoning Board of Review,* 417 A.2d 303, 307 (R.I. 1980). Accordingly, we must determine whether any legally competent evidence exists to sustain the conclusion that the January 27, 1986 meeting was nullified because of the lack of notice to an abutter. We conclude that no such evidence exists.

■ Section 45–24–18 directs that the zoning board of review shall give public notice and shall give due notice to the parties in interest. Compliance with this statute is a prerequisite to the exercise of the jurisdiction of the zoning board of review. *Zeilstra,* 417 A.2d at 307. This jurisdictional requirement serves to afford those having an interest an opportunity to present facts that might shed light on the issue before the board. *Carroll v. Zoning Board of Review of Providence,* 104 R.I. 676, 678, 248 A.2d 321, 323 (1968). Moreover, adequate and sufficient notice is a requirement of due process in zoning matters. *Zeilstra,* 417 A.2d at 307; *Carroll,* 104 R.I. at 679, 248 A.2d at 323. Hence, action taken by a board that has not

satisfied the notice requirements is a nullity. *Corporation Service, Inc. v. Zoning Board of Review of East Greenwich,* 114 R.I. 178, 180, 330 A.2d 402, 404 (1975).

■ This court has repeatedly held, however, that appearance before the zoning board is proof that the unnotified party had the opportunity to present facts that would assist the zoning board in the performance of its duties, and therefore, such a party waives the right to object to any alleged deficiency of notice. *Zeilstra,* 417 A.2d at 307; *See Perrier v. Board of Appeals of Pawtucket,* 86 R.I. 138, 143–44, 134 A.2d 141, 144 (1957). Furthermore, notice can be waived by the party who does not receive due notice. *R.I. Home Builders, Inc. v. Budlong Rose Co.,* 77 R.I. 147, 152–53, 74 A.2d 237, 239 (1950).

The situation in the instant case is unique in that the property owner not originally notified, Edward Zimmerman (Zimmerman), is not a party to this action. That Zimmerman had no subsequent quarrel with his lack of notice of the January 27, 1986 hearing was evidenced by his waiver of notice that was presented to the zoning board at the March 24, 1986 hearing.

As noted above, the notice requirement serves to give those having an interest in the matter an opportunity to present facts. *Carroll,* 104 R.I. at 678, 248 A.2d at 323. Zimmerman's waiver meant that he did not wish to present any facts, and therefore, the purpose of the notice requirement was satisfied. Zimmerman, and Zimmerman alone, had the right to challenge the board's January 27, 1986 hearing. He chose not to do so by waiving his right to notice. The zoning board could not transform lack of notice to Zimmerman into a fatal flaw capable of nullifying the January 27, 1986 hearing because Zimmerman's waiver of notice and failure to appeal fulfilled the purpose of the notice requirement. Therefore, there was no ground on which the zoning board could call, apparently *sua sponte,* a new meeting on March 24, 1986.

■ Because the notice requirement was met in this case, we hold that the original decision of the zoning board was valid. The zoning board reviewed Ryan's application

and voted to approve the variance on January 27, 1986. Ryan received a decision letter dated February 6, 1986. No appeal was taken from that decision, and no unnotified abutter challenged that decision. All subsequent proceedings were therefore unauthorized inasmuch as the zoning board's February 6, 1986 decision was final. Consequently, all subsequent actions, starting with the March 24, 1986 board meeting, are null and void.

The respondent abutters Nelson O. Clayton and Herman and Linda Mast contended, however, that Zimmerman was not the only abutter who did not receive notice of the January 27, 1986 meeting. The February 4, 1986 notice by the Building Inspector listed two other property owners within 200 feet as abutters who did not receive notice. On December 8, 1987, John and Elizabeth O'Mara entered a *pro se* appearance in WC 86–170. The respondent abutters argued that the O'Maras' failure to appeal the initial zoning board decision resulted from their reliance on the notice of the March 24, 1986 meeting. However, the record reveals that the board named only Zimmerman as "the abutter not notified originally." Aside from the building inspector's letter we have gleaned no evidence in the record, nor has the zoning board found that the O'Maras were entitled to notice. In fact, at the March 24, 1986 hearing the zoning board explicitly noted that *only Zimmerman* should have received notice of that hearing. Thus, no legally competent evidence supports the contention that the O'Maras were legal abutters.

Consequently, we grant Ryan's petition for certiorari, and we hold the zoning board's initial decision on January 27, 1986, and its February 6, 1986 letter of notice to be valid. All subsequent actions in this case are null and void, and decisions subsequent to the February 6, 1986 letter of notice are hereby quashed. The papers in the case are remanded to the Superior Court with our decision duly endorsed thereon.