[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Appellant Alfred Carpionato has appealed to this Court in order to complain of the Johnston Zoning Board of Review's decision to granting dimensional variances and a special use permit to Appellee Hartford Avenue Associates ("HAA"). For the reasons herein, this Court denies that appeal.
 FACTS AND TRAVEL
HAA plans to renovate commercial property located in a general business zoning district (B2), formerly known as the Westgate Shopping Center, consisting of a 10.89 acre lot at 1450 Hartford Avenue, Plat 33-3, Lot 86. HAA plans to raze the existing buildings on the premises and construct a new BJ's Wholesale Club comprising a 115,367 square foot building as well as gas station. B2 zoning permits, inter alia, general merchandise, department, and furniture stores, such as a BJ's unit, but the BJ's prototype for New England typically includes gasoline pumps, which are allowed in B2 zones by special use permit only.
Although a retail gasoline business had existed on the property some time in the past, it had been closed for some years. The gas tanks had been removed, and construction of a new gas station would diminish the number of existing parking spaces. The Johnston Zoning Ordinance requires that a building the size of the proposed BJ's include a lot with 634 parking spaces. Johnston Ordinance, Article III, Section H (1)(d) (retail services must have 5.5 off-street car spaces for every 1,000 square feet of gross leasable area). After construction of the contemplated building and the reinstallation of a gas station, the subject lot would not encompass the requisite number of parking spaces. The limitation on the parking situation was further affected because the property sits, in part, on a one-hundred-year flood plain that precludes designating additional parking spaces behind the building. Thus, HAA petitioned for a dimensional variance allowing a reduction of required parking spaces to 545.
HAA also sought a dimensional variance to build an ornamental front that exceeded the building height limitations by approximately eight feet. HAA sought a third dimensional variance to allow an additional pylon sign.
The Board conducted at least five advertised public hearings at which HAA presented experts who testified as to the local real estate market, traffic engineering, and environmental management. Peter Scotti, a real estate expert, testified that changes in the market had rendered the existing buildings obsolete and that any new "big box" tenant would require some form of dimensional relief. Corroborating testimony was provided by Brian Beauregard of HAA, who stated that despite his efforts he had been unable to secure a long-term tenant. Scotti also noted that the property is hindered by unique characteristics of the land, an opinion that was further explicated by Kevin Morin of DiPrete Engineering Associates and Pam Pogue, a Rhode Island flood plain manager. Morin described the nature of the flood plain and concluded that HAA's proposal to provide 545 parking spaces not only adequately provided for flood control but also improved water drainage.
Edward Pimentel, a land use expert, testified on behalf of the objector and claimed that if a smaller BJ's were built, no variances would be needed. He further suggested that the proposed BJ's would not be consistent with the Johnston Comprehensive Plan.
On September 25, 2003, the Board voted (4-1) to deny HAA's initial petition. Board member Steven Ucci said that "the site is too small for what wants to be built there . . . We haven't heard anything about any dimensional hardship, any height hardship . . . The fact the site they'd really like to go to, is too small to fit the building, is not what I see as a hardship." He expressed some concern about the 545 parking spaces, questioned the evidentiary basis for a special use permit for the gas station, and wondered whether the project would ultimately benefit the health and welfare of the community. Board member Anthony Verdardo voted against the initial application, stating, "I don't think the size is conducive to having a gas station on the lot along with a store such as BJ's." Two other board members similarly voted to deny the application in its original form, with Anthony Pilozzi remarking that a lack of parking spaces might invite motorists to park too close to a proposed propane tank.
Although the Board's vote was adverse to HAA's initial application, the Board never issued or filed a written decision formally rejecting it. The following month the Board indicated its willingness to reconsider the application if it included modifications that addressed the concerns expressed at the September hearing.
Thereafter, on November 25, 2003, and after public notice, the Board considered HAA's amended plan that eliminated propane sales, made concessions on the number of gasoline pumps, and reconfigured the number of parking spaces. After review and reconsideration the Board unanimously embraced the revised plan by a 5-0 vote and filed its formal, written decision granting the application.
Carpionato timely appealed the Board's decision to the Superior Court pursuant to § 45-24-69.
 STANDARD OF REVIEW
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d), which provides that:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
In the course of such a review this Court is not entitled to substitute its judgment for that of the zoning board if a review of the record below discloses that the decision was supported by substantial evidence.Apostolou v. Genovesi, 388 A.2d 821, 825 (1978). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Reviewof North Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswellv. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). Reversal of the board's decision concerning exceptions or variances under zoning ordinances is invited only when it is clear that the board acted arbitrarily and/or abused its discretion. Madden v.Zoning Board of Review of the City of Warwick, 89 R.I. 131, 134,151 A.2d 681, 683 (1959).
 The Zoning Board's Power to Reconsider
Carpionato claims that the Board impermissibly considered HAA's amended application. The Court disagrees. See Sciacca v. Caruso, 769 A.2d 578, (R.I. 2001) (assuming, without deciding, that a zoning board can reconsider its decision). The Rhode Island Supreme Court has ruled that administrative boards have the inherent power to reconsider their decisions, as "the power to render a decision in the first instance embodies the power to reconsider that decision." In re Denisewich,643 A.2d 1194, 1197 (R.I. 1994) (holding that a hearing committee has the inherent power and obligation to reconvene for the purpose of considering recently available testimony). "It has generally been held that administrative tribunals endowed with quasi-judicial powers embody the inherent power to reconsider their judicial acts." Id.
In any event, because the Board's initial adverse vote at the September 30, 2003 hearing did not constitute a final decision, the Board was free to reconsider and recalibrate its ultimate vote. Section 45-24-61(A) and Article VI, § H (1) of the Johnston Ordinance generally require that within a reasonable period of time after a public hearing the Board should issue its decision, which thereafter must be recorded and filed within thirty working days of its issuance. Id. After the decision has been formally filed, an aggrieved party has twenty days within which to file an appeal. Sec. 45-24-69; Art. VI § C (1). Accordingly, until the decision has been filed, the Board should be free to change its mind.See Moschetti v. The Bd. Of Zoning Adjustment of the City of Boulder,574 P.2d 874, 875 (Colo.App. 1977) (administrative boards have authority to modify their decisions at any time prior to the date an appeal must be perfected). Accord, American Smelting Refining Co. v. Arizona AirPollution Control Hearing Bd., 550 P.2d 621, 622 (Ariz. 1976) (a board, commission or tribunal can use its appropriate modification power to reconsider decisions until the time when an appeal is perfected); cf.,Ryan v. Zoning Bd. of Review of Town of New Shoreham, 656 A.2d 612, 616
(R.I. 1995) (board's proceedings were unauthorized after its decision was final).
In the instant case, the Board's September 25, 2003 vote never ripened into a formal written, filed decision. Therefore, the Board transgressed no rule of law by considering HAA's revised plan.
 The Sufficiency of the Board's Decision
Carpionato further complains that the Board's findings of fact and conclusions of law ultimately approving HAA's application were insufficient. Carpionato is mistaken.
The Board's decision explicitly makes ten findings of fact aptly titled, "Factual Findings":
 1. The property at 1450 Harford Avenue presently contains two buildings comprising 117,482 +/- square feet and has been the site of a retail shopping center for many years.
 2. The proposed BJ's Wholesale Club is a permitted use under the zoning code but the gasoline pumps require a special use permit.
 3. The vast majority of the property has been vacant for many years while the Applicant has investigated the potential redevelopment of the site.
 4. There is an existing BJ's Wholesale Club in the vicinity at 1300 Harford Avenue that would close and be relocated to the subject property.
 5. The site formerly had a gasoline service station on it that had been closed.
 6. The existing shopping plaza has extensive signage and a pylon sign.
 7. The existing parking lot and off-street parking spaces are constructed within the front setback and the proposed BJ's Wholesale Club would continue that parking scheme.
 8. The size of the proposed 115,367 +/- square foot BJ's Wholesale Club is comparable to the existing shopping plaza buildings.
 9. The Applicant has received an Insignificant Alteration Permit from the Rhode Island Department of Environmental Management for the proposed project.
 10. The Rhode Island Department of Transportation has given conceptual approval to the plans submitted by the Applicant for the off-site improvements and proposed ingress and egress from the site.
The decision also sufficiently documents the Board's application of the factual findings to the legal standards promulgated by the State of Rhode Island and the Town of Johnston for granting zoning relief. In granting the dimensional variance, the Board carefully set forth the legal standard for granting dimensional relief and concluded that:
 "dimensional relief is reasonable[;] the proposed structure is comparable in size to what is to be replaced. The parking plan is reasonable and supported by competent testimony. The requested relief is reasonably necessary for the allowable site development. The intended use is in compliance with the comprehensive plan and is in conformity with the surrounding uses. The relief is necessary and adequate parking is provided. The design features are appropriate. Denial of the petition will prevent appropriate and feasible development of the land."
When discussing the grant of the special use permit, the Board wrote:
 "Surrounding commercial uses are compatible with the proposed application. Gasoline sales are not new to the area. Environmental concerns have been addressed. The gasoline service station will meet and is subject to permitting requirements, the applicant demonstrates familiarity and experience in gasoline sales. Applicant has renewed environmental permitting approval for the site plan. The Pocasset River Watershed will be improved. The order of growth and development of the Town of Johnston will be enhanced by this development. Department of Environmental Management approval ensures wetland and drainage protection. Traffic and parking plans afford protection of the best interests of the town. The comprehensive plan considers this area as important to the commercial development of the Town of Johnston. This proposed development is in conformity therewith. The applicant's proposed use is a continuation of a commercial use which has served the residents of the Town of Johnston for decades. The expanded tax revenue further benefits the town. The Departments of Environmental Management and Transportation have given preliminary approval to the site plan. The expert traffic testimony stated that the improvements to Hartford Avenue planned by the state and the location of the curb cut at the Shaw's entrance will help with traffic safety. The permitting process for this plan will insure [sic] that all regulatory safeguards are met."
Carpionato also claims that the Board neglected to adopt findings of fact at the November hearing to support granting the application. Carpionato, however, misconceives the limited purpose of the November hearing. It was not intended to rehash issues that had already been fully explicated at the earlier hearing; rather, it was intended to see if the modifications offered solutions to the concerns raised in September, concerns that had already resulted in detailed factual itemization.
Thus, the Board's discussions at the end of the November meeting necessarily were limited to particularized issues: e.g., the elimination of propane sales, recalibration of parking spaces, and reduction of gasoline pumps. This Court finds no error by the Board in that regard, and the Board's written decision admits of no such claimed error.
Carpionato also suggests that the Board's decision is infirm because not all of the Board members affixed their signatures to it and that it does not expressly indicate the vote of each member. See Section 45-24-61(a). This contention is without merit. The contents of the written decision were adopted in their entirety by a unanimous vote of the Board members, and the Board's findings of fact indicate that all of the requirements for granting a variance were met, concluding with the phrase "so voted," followed by the names of the Board members and signed by the chairman.
 The Board's Power To Grant both Dimensional Reliefand a Special Use Variance
Because the Board granted both a special use variance for the gas station and dimensional relief from parking and height restrictions, Carpionato suggests that the ordinance does not authorize the granted relief, relying on Newton v. Zoning Board of Review, 713 A.2d 239, 241
(R.I. 1998). The Newton decision, however, should be constrained to the factual circumstances therein.
In Newton, the Supreme Court considered a zoning ordinance that required compliance with certain developmental standards as a prerequisite to obtaining a special use permit. Specifically, a special use permit could only be granted if, in addition to the general requirements for granting such relief, the applicant also complied with minimum standards for lot size, density, parking, exit, entrance, landscaping, side and rear lot requirements. In the instant Ordinance, unlike the Warwick Ordinance considered in Newton, the requirements for obtaining a special use permit do not specifically mandate compliance with the dimensional requirements of the Ordinance or a specific section thereof. See § 45-24-42. Therefore, the facts of this case are not compellingly analogous to those in Newton,
and the Board did not act in excess of Ordinance provisions.
 Dimensional Relief
The Johnston Ordinance provides that an application for a dimensional variance may be granted if the Board is presented with credible evidence that:
 (1) the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant;
 (2) the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the ordinance or the Comprehensive Plan upon which this Ordinance is based;
(4) the relief granted is the least necessary; and
 (5) the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property.
The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief. Johnston Zoning Ordinance, Article III, Section O.
The record reflects Scotti's testimony that the existing buildings were at the end of their useful life, that no potential retail tenant would find the current situation acceptable, and that any new retailer would require similar dimensional relief. Additionally, Beauregard indicated that previous attempts to revitalize the property had failed or were not feasible in today's market.
The Board also had before it substantial evidence that the property was burdened by unique characteristics of the land. Morin documented the basis for his opinion that the parking restraints were a direct result of the 100-year flood plain of the Pocasset River, as well as the adjacent wetlands and wetland buffers.
As to granting the height variance, the record reflects that the majority of the building complied with local height restrictions. Only the peaks of the ornamental front exceeded the maximum height allowed. An advisory letter from the Planning Board applauded the effort to minimize the visual effect of a "big box store," further contributing to the goal of the Comprehensive Plan to develop a "center of town/Main Street" type of district.
As to the signage variance, the Board's decision noted that existing businesses on the property already displayed extensive signage. Because the BJ's unit will be a large building, proportionately large signs were reasonable accoutrements. Furthermore, one of the existing pylon signs was to be removed and replaced with a smaller, monument sign. When viewed as a whole, all of this evidence indicates that HAA would suffer more than a mere inconvenience absent the requested variance.
The record also reflects that the relief requested was the least relief necessary. Scotti testified that any new tenant would also need substantially the same dimensional remedy and that the relief requested was the least relief needed. See Lischio v. Zoning Bd. of Review,818 A.2d 685, 691 (R.I. 2003) (applicant must demonstrate some adverse impact amounting to more than a mere inconvenience); DiDonato v. ZoningBd. of Review, 104 R.I. 158, 165 (1968) (more than a mere inconvenience means that an applicant must show that the relief he is seeking is reasonably necessary for the full enjoyment of his permitted use). Accordingly, the Board's grant of dimensional relief to HAA was not impermissible.
 Special Use Permit
In order to grant a special use permit, the Board must find that:
 (1) the granting of the special-use permit will be compatible with the neighboring uses and will not adversely affect the surrounding neighbors' use and enjoyment of their property;
 (2) granting the special use permit will be environmentally compatible with neighboring properties and the protection of property values;
 (3) granting the special use permit will be compatible with the orderly growth and development of the Town of Johnston, and will not be environmentally detrimental therewith;
 (4) the best practices and procedures to minimize the possibility of any adverse effects on neighboring property, the Town of Johnston, and the environment have been considered and will be employed, including but not limited to, considerations of soil erosion, water supply protection, septic disposal, wetland protection, traffic limitation, safety and circulation;
 (5) the purposes of this Ordinance, and as set forth in the Comprehensive Plan, shall be served by said special use permit;
 (6) granting the special use permit will substantially serve public convenience and welfare; and
 (7) granting of the special use permit will not result in or create conditions that will be inimical to the public health, safety, morals and general welfare of the community. Johnston Zoning Ordinance, Art. III, Section P; Section 45-24-41.
Gasoline stations are permitted in a B2 zone by special use permit. Johnston Ordinance, Article III, Section D, Table III D-1, Subsection 9 (6). Here, gasoline stations were neither new to the area nor to the subject property, as a gasoline station had been previously operated on the subject property. Scotti indicated that the presence of the fuel station would increase the value of neighboring properties, and a traffic expert, Paul Bannon, said that the station would not have a negative impact on the traffic circulation or safety.
This Court finds that the Board's grant of the special use permit was not clearly erroneous. See Salve Regina College v. Zoning Bd. of Review,594 A.2d 878, 880 (R.I. 1991) ("The rule is that satisfaction of a `public convenience and welfare' pre-condition will hinge on a showing that a proposed use will not result in conditions that will be inimical to the public health, safety, morals and welfare."); Hugas Corp. v.Veader, 456 A.2d 765, 771 (R.I. 1983) ("In order to establish that the special exception sought will substantially serve the public convenience and welfare, an applicant must show that `neither the proposed use nor its location on the site would have a detrimental effect upon the public health, safety, welfare and morals.'").
 Conclusion
For all of the foregoing reasons, this Court finds that the Board's decision was supported by reliable, probative, and substantial record evidence, that it was not made upon unlawful procedure, nor did it constitute an abuse of discretion. Substantial rights of appellant Carpionato have not been prejudiced. Accordingly, the decision of the Board granting the application is hereby affirmed. Counsel shall submit an appropriate form of judgment for entry.