DECISION
The matter before the Court is an appeal from the June 21, 2005 decision by the Town of Charlestown Zoning Board of Review (hereinafter "Board") denying Kevin Kulak's (hereinafter "Kulak" or "Applicant") application for a special use permit. The Applicant requested permission to install a septic system for a single-family residence proposed for construction in the Town of Charlestown (hereinafter "Town"), State of Rhode Island. The property at issue is located on Surfside Avenue and is further identified as Assessor's Map 2, Lot 42 (hereinafter "Property). The Applicant timely appealed to this Court pursuant to G.L. 1956 § 45-24-69 and provided the abutters to said Property with the requisite notice of appeal in accordance with §45-24-69.1.[1]
 Facts and Travel
On May 17, 2005[2] and June 21, 2005,[3] the Applicant appeared before the Board on his petition for a special use permit to install a septic system for a single-family residence — the construction of which is a permitted use in this zone — in a flood zone located within 100 feet of a coastal feature in a R-2A Zoning District.[4] See Town of Charlestown Zoning Ordinances § 218-87(A) (hereinafter "Ordinances"). The Applicant's Individual Sewage Disposal System (hereinafter "ISDS") application was approved by DEM on April 14, 2005, and was submitted as an exhibit at the May 17th
hearing. (Tr. 1 at 5-6, 9.)
At the June 21, 2005 hearing,[5] the Board denied the requested relief, with three (3) members approving and two (2) members denying the application. Section 218-24(J)(3) of the Ordinances requires four votes of approval for the issuance of a special use permit.
The Applicant presented three witnesses — Mr. Richard Lipsitz, to describe the site and the septic system; Mr. George Valentine, a certified appraiser from Newport Appraisal Group; and Mr. Scott Rabideau, a coastal biologist and soil scientist — all of whom the Board accepted as experts. (Tr. 1 at 10, 22, 36.)[6]
Mr. Lipsitz specifically addressed the septic design, as approved by DEM, and testified that this particular system was not a threat to the drinking water supply as it would be in excess of 400 feet from any public drinking well and over 100 feet from private wells, if any existed. Mr. Lipsitz further discussed that the area in issue is serviced by a public drinking water supply and that Applicant's proposed system, the Advantax model, is an up-to-date "top of the line system approved by DEM rules and regulations." (Tr. 1 at 17.)
Mr. Richard Campbell, an Intervenor and an abutter whose property is located on Lot 66, 150 feet from the proposed location, discovered wells within 400 feet of the proposed ISDS system and shared his lay opinion at the June 21, 2005 hearing. (Tr. 2 at 16.)[7] These discoveries resulted from Mr. Campbell's personal observations, as well as his discussions with homeowners and Mr. Dan McLoud, the Head of Operations for the Central Beach Water District. (Tr. 2 at 16.) Mr. Campbell premised his opposition to Kulak's application on the existence of these "back up wells" within 400 feet of the proposed ISDS location. A number of other abutting landowners spoke at the hearing and objected to the application.[8]
Mr. Valentine testified as an expert appraiser. He discussed his familiarity with the neighborhood and the application, and prepared a report indicating that the proposed use would not have a negative impact on the character of the neighborhood and would meet the special use permit criteria. Mr. Valentine concluded that the proposed use will not adversely affect the public health, safety and welfare, and that traffic generated by a single-family residence would not adversely impact the character of the area. (Tr. 1 at 35.)
Finally, Mr. Rabideau testified as an expert coastal biologist and soil scientist. He opined that an "advanced" groundwater study was unnecessary since water from a public water supply is available on the site. (Tr. 1 at 37.) Mr. Rabideau conducted further investigation involving the U.S. Geological Survey and presented a map which depicted the groundwater flow.[9] He opined that "[b]ecause of the fact that the public drinking water supply well is located to the west of the subject property and the ground water flow is towards the east towards Ninigret Pond, it should not be adversely impacted by the ISDS system being proposed on this property." (Tr. 2 at 9.) Mr. Rabideau ultimately concluded that, "[M]y opinion, based on the data that's available and based on the state regulations and the history that made up those state regulations, which I played a part in over my career tell me that in my opinion that well will not be impacted by a septic system with the directional ground water that exists today in that area." (Tr. 2 at 13.)
The Decision of the Town of Charlestown Zoning Board (hereinafter "Decision"), is dated June 28, 2005 and was filed in the Town's land evidence records on July 14, 2005. On appeal, the Applicant raises two arguments urging this Court to reverse the Board's Decision. First, the Applicant argues that the Board's decision is clearly erroneous, arbitrary and capricious in view of the uncontroverted and substantial testimony of the whole record. Secondly, the Board's decision violates constitutional, statutory and ordinance provisions, thus prejudicing the Applicant's rights.
 Standard of Review
The Court's appellate consideration of a decision issued by a zoning board of review is delineated in § 45-24-69(d) and provides:
 "[T]he court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
In his or her review of a zoning board's decision, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."Toohey v. Kilday, 415 A.2d 732, 735 (R.I. 1980) (quotingDeStefano v. Zoning Bd. of Review, 122 R.I. 241, 245,405 A.2d 1167, 1170 (1979)). The term "substantial evidence" has been defined as, "more than a scintilla but less than a preponderance." Apostolou v. Genovesi, 120 R.I. 501, 508,388 A.2d 821, 824-25 (1978). This standard means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. at 508, 825 (citing Richardson v. Perales,402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)). The "reasonableness" of the zoning board's action is assessed in terms of the board's reliance upon the evidence before it. Id. (citing United States v. Bianchi Co., 373 U.S. 709, 715,83 S. Ct. 1409, 1414 (1963)).[10]
 Analysis
The Town Ordinance lists seven factors the Board must consider in its review of a special use permit application, and satisfactory evidence of these standards must be introduced by the Applicant.[11] In Toohey v. Kilday, 415 A.2d 732
(R.I. 1980), our Supreme Court discussed the applicable standard for granting a special use permit, and held that as a condition precedent, the applicant must establish that the relief sought is "reasonably necessary for the convenience and welfare of the public." Id. at 737. However, a permitted use cannot be denied on the grounds that an applicant failed to prove there exists a community need for said relief. Rather, in order to satisfy the prescribed standard, the applicant need only show that "neither the proposed use nor its location on the site would have a detrimental effect upon public health, safety, welfare and morals." Id. at 736. (quoting Hester v. Timothy,108 R.I. 376, 385-86, 275 A.2d 403, 406 (1971); Nani v. Zoning Bd. ofReview of Smithfield, 104 R.I. 150, 242 A.2d 403 (1958)).
The Board, in denying the application, focused on three areas where it believed the application was lacking; specifically, drinking water supplies, sewage and waste disposal, and the absence of a formal traffic study. The Applicant argues that the denial was pretextual and that substantial evidence was presented to support approval of the application.
In reviewing the record in its entirety, it appears that the dissenting members, whose negative votes resulted in the denial of the application, relied upon hypothetical scenarios regarding the potential for certain occurrences without crediting the uncontradicted expert testimony regarding the improbability of such.[12] The dissenters primarily focused on the potential for contamination of one legal drinking well — located on Lot 63, which is 400 feet from the proposed location and does not access the public drinking supply, as well as possible future contamination if the currently disassembled "backup wells" were ever reconnected for drinking water use. The age of the data upon which the groundwater opinion was based, and the absence of an adequate traffic study were also posited as reasons for denial.
There is a lack of credible evidence to support the dissenting determination that this approved ISDS system will contaminate the drinking water supply. It remains undisputed that this area is serviced by a public water system and the only reason for reverting to the "backup wells" would be if the public system failed in the wake of a catastrophic event, such as a hurricane. Evidence was presented confirming the disassembly of the well systems; approval from DEM or the Department of Health would be required before reconnection and use. In light of the entire record, there is simply insufficient evidence to support a finding of adverse impact to the community from the installation of this septic system for a single-family residence. The dissenting votes appear arbitrary in that they ignore the expert testimony and the Applicant's right to utilize a buildable lot, thereby validating the abutters' desire not have a home built upon this lot. See Zavota v. Zoning Bd. of Review for the Townof Barrington, PC/2002-1905 2004 R.I. Super. LEXIS 89 at *23-24 (R.I.Super. May 7, 2004) (wherein the trial justice discussed that "this Court must be satisfied that the Board is not denying the applicant relief simply to ensure that no house is ever built on the Property, as some of the objectors desired, as that would be tantamount to a taking of the Property without just compensation.")
There was a lack of credible evidence before the Board, beyond mere speculation, to suggest that neighboring lots would be affected. The record does not support a conclusion that such lots utilize or intend to utilize the disconnected wells or that the Applicant's system will result in a new source of contamination. Through expert testimony, this Applicant demonstrated that the proposed use and its location will not have "a detrimental effect upon public health, safety, welfare and morals." See Toohey,415 A.2d at 737. The record does not support the denial of an application for a special use permit when the Applicant is using a state of the art system approved by DEM for this site, and the record is devoid of credible evidence that the system will be a source of contamination for the public water supply. (Tr. 88-89.)See Mill Realty Assocs. v. Crowe, 841 A.2d 668, 681 (R.I. 2004) (Flanders, J. dissenting) (the dissent discussed that the board acted arbitrarily and capriciously because it ignored the ISDS approval from DEM and failed to give reasons for why it upheld denial of the permit.)
The requirement under § 218-25(A)(7) of the Ordinances is "[t]hat the traffic generated by the proposed use will not cause undue congestion or introduce traffic hazard to the circulation pattern of the area." In granting a special use permit, "[T]he rule [is] that satisfaction of a `public convenience and welfare' pre-condition will hinge on a showing that a proposed use will not result in conditions that will be inimical to the public health, safety, morals and welfare." Salve Regina College v.Zoning Bd. of Review of the City of Newport, 594 A.2d 878, 880
(R.I. 1991) (quoting Nani, 104 R.I. at 156, 242 A.2d at 406). The Applicant did present Mr. Valentine who opined, not as a traffic engineer but rather in connection with his experience as a real estate appraiser, that traffic generated by a single-family residence would not adversely impact the area. (Tr. 1 at 35.) See Toohey, 415 A.2d at 737 (citing Perron v.Zoning Bd. of Review of Burrillville, 117 R.I. 571, 577,369 A.2d 638, 642 (1977)) (a mere increase in traffic does not necessarily adversely impact the public convenience and welfare when neither "a consequent intensification of traffic congestion nor hazard at the location accompanies it.") This Court finds no substantial evidence in the record upon which the Board could have reasonably concluded that the construction of a single-family residence, a use consistent with the area, would adversely impact the traffic pattern in this community.
Accordingly, this Court does not find substantial evidence to support the Board's conclusion that the issuance of a special use permit would adversely affect the health, safety, and welfare of the Central Beach community.
 Conclusion
After review of the hearing record, this Court finds that the Decision issued by the Zoning Board of Review, denying the issuance of a special use permit, is clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record. The evidence of the entire record supports the conclusion that the proposed use is compatible with the neighborhood, environment, and the public's health, safety, and welfare, and will not pose a threat to the area drinking water supplies. Accordingly, this Court reverses the Decision of the Zoning Board of Review and remands the matter to the Board with instructions that a special use permit be issued for the installation of a septic system at the Property, consistent with DEM approval and the specifications set forth in the application.
[1] This Court received objections to this appeal from Richard and Mary Campbell, Intervenors in this action, and Mr. Christopher Zangari, an Assistant City Solicitor for the Town.
[2] Town of Charlestown Zoning Board of Review, In Re: Continuation of Petition #961 — Kevin Kulak, Transcript of May 17, 2005 (hereinafter "Tr. 1").
[3] The May 15, 2005 hearing was continued until June 21, 2005 to provide the Applicant an opportunity to present additional items to the Board.
[4] An R-2A Zone is a "low density district intended primarily for single family residential development." (Tr. 1 at 25.)
[5] Town of Charlestown Zoning Board of Review, In Re: Continuation of Petition #961 — Kevin Kulak, Transcript of June 21, 2005 (hereinafter "Tr. 2").
[6] Although Mr. Lipsitz is not a licensed professional engineer or septic designer; he is clearly knowledgeable, from his experience as a surveyor, relative to individual sewer systems in waterfront applications. (Tr. 2 at 54.) His qualifications as an expert were accepted by the Board (Tr. 1 at 10), and he is a witness qualified by "knowledge, skill, experience, training or education" to testify with regard to ISDS applications. See R.I. Rules Evid. 702.
[7] At the June 21, 2005 hearing, Mr. Campbell admitted that these wells are referred to as "backup drinking wells," which were utilized before a central water system was installed. Once the central water system was installed the fire district required that the backup wells be disconnected. If the central water system were to fail; however, each home has the ability, subject to regulatory approval, to reconnect the wells. (Tr. 2 at 18-20.) Mr. Lipsitz opined as to the probable illegality of using these "backup wells" without the State's approval now that they have been disconnected. He stated that "once they are disconnected and the water department had them disconnected so they do not flow back in, they may be contaminated. They have to meet the regulations from DEM and the Department of Health." (Tr. 2 at 60.)
[8] The abutters' opposition included lack of notice at the location site; the potential for future hurricanes to flood the area causing seepage from the septic system, which would adversely impact the public convenience, health and welfare; and the desire to preserve Central Beach, as the Applicant's lot is the only remaining open space in the beach community and has served as a play area for the children and a right-of-way for the community members. (Tr. 2 at 28, 35, 46.)
[9] Although Mr. Rabideau was questioned regarding the age of the data utilized, he confirmed that the data he used is the best available data to show the directional flow of groundwater and is still the methodology used by DEM. (Tr. 2 at 10-11, 13.)
[10] The Applicant argues that the Board lacked jurisdiction due to its failure to comply with the notice requirements of § 218-25 of the Ordinances, which require posting of notice of the hearing on the subject property. However, our Supreme Court has repeatedly held "that appearance before the zoning board is proof that the unnotified party had the opportunity to present facts that would assist the zoning board in the performance of its duties, and therefore, such a party waives the right to object to any alleged deficiency of notice." Ryan v. Zoning Bd. of Reviewof the Town of New Shoreham, 656 A.2d 612, 616 (R.I. 1995) (citing Zeilstra v. Barrington Zoning Bd. of Review,417 A.2d 303, 307 (R.I. 1980)). The Applicant appeared before the Board and presented ample evidence in order to assist the Board in its Decision. The direct abutters received adequate notice via certified mail and a public notice was placed in the local newspaper. See Graziano v. Rhode Island State Lottery Comm'n,810 A.2d 215, 221-22 (R.I. 2002) (An individual who actually appears before a tribunal lacks standing to object to a "real or perceived" defect in the notice of that particular meeting.) Accordingly, this Court finds no deficiencies of notice in violation of the Applicant's rights, and affirms the Board's jurisdiction over this matter as proper.
[11] Section 218-25(A) governs the issuance of special use permits and requires the following:
 (1) The public convenience and welfare will be substantially served;
 (2) It will not result in adverse impacts or create conditions that will be inimical to the public health, safety, morals and general welfare of the community;
 (3) The requested special permit will not alter the general character of the surrounding area or impair the intent or purpose of this Zoning Ordinance or the Comprehensive Plan upon which this Ordinance is based;
 (4) That the granting of the special use permit will not pose a threat to drinking water supplies;
 (5) That the use will not disrupt the neighborhood or the privacy of abutting landowners by excessive noise, light, glare or air pollutants;
 (6) That the sewage and waste disposal into the ground and surface water drainage from the proposed use will be adequately handled on site; and
 (7) That the traffic generated by the proposed use will not cause undue congestion or introduce traffic hazard to the circulation pattern of the area.
[12] According to § 45-24-69(c), this Court's review is confined to the record of the hearing before the zoning board of review, unless a party appeals to the Court in order to present additional evidence which is found to be necessary for proper disposition of the appeal. See § 45-24-69(c). Therefore, the Court will not consider any evidence presented in either the Town or the Intervenors' memoranda of law which was not presented as part of the record before the Board, specifically, evidence relating to the experts' qualifications.