DECISION
This matter is before the Court on Petitioner Albert L. Trazi's ("Trazi") appeal from the Town of Scituate Zoning Board's ("Board"), February 22, 2005 decision denying Trazi a special use permit to construct a two-family home on his property. Jurisdiction is pursuant to G.L. 1956 § 45-24-69. For the reasons set forth below, the Board's decision is hereby affirmed.
 Facts and Travel
Trazi is the owner of a piece of property in Scituate, Rhode Island, located at 227 Plainfield Pike and identified as Assessor's Plat 12, Lot 59 ("Property"). The Property consists of 4.9 acres and is located in a RS-120 residential district, which permits two-family housing with the grant of a special use permit. Trazi filed an application for a special use permit to construct a three-bedroom extension alongside his current home, thereby making it a two-family residence. Trazi's current home is 28 feet by 60 feet, and the proposed addition would be 28 feet by 66 feet, approximately doubling the size of the existing structure. (Tr. at 2.) Pursuant to Article I, Section 6(C) of the Scituate Zoning Ordinance, a hearing on this matter was held before the Board on February 22, 2005.
At the hearing, Trazi made it known that he intended to use the addition to his home as a residence for his son and his son's fiancée. (Tr. at 2, 4.) Trazi proposed that should the special use permit be granted, he would place a condition on the property requiring one of the units to remain owner-occupied. (Tr. at 4.) Trazi also testified that he intended the addition to conform to the existing ranch house design and to appear aesthetically pleasing. (Tr. at 10-11.) In further support of his application, Trazi submitted a letter signed by several abutting neighbors stating that they had no objection to the addition. (Appellant's Exhibit 3.) Moreover, Trazi presented as a witness, Robert DiGregorio, a realtor with over 15 years experience. DiGregorio opined that the proposed addition would "fit nicely" with the existing area and would be compatible with the neighboring land uses. (Tr. at 16-18.)
Upon conclusion of Trazi's presentation, the Board recessed and went into deliberation. During these deliberations, the Board addressed a number of issues, particularly the size and appearance of Trazi's proposed structure, the existence of other two-family homes in the surrounding area, and what effect granting Trazi's special use permit would have on the future development and rural character of the region. The Board also asked Trazi if it would be possible to construct his addition at the rear of his home instead of on the side, so that it would maintain the rural character of the area and be more aesthetically pleasing. (Tr. at 39-40.) Trazi informed the Board that he could not comply with their request due to the location of the septic system on his land. (Tr. at 39.) Thereafter, a motion was made to approve the application but was not seconded by any other Board member. A motion to deny the special use permit was then made, which was supported by a four to one vote.
Subsequently, the Board issued a written "Memorandum of Decision" in which it made the following findings of fact:
 "The Board agrees with the Plan Commission that it [Trazi's requested addition] is not in compliance with the Comprehensive Plan as it does not preserve and protect the rural character of the Town. This is not compatible with the neighboring land use. It could hinder the future development of the Town because it could create a whole new area of two-family and it is not in conformance with the Comprehensive Plan." (Appellant's Exhibit 1.)
Trazi filed a timely appeal of the Board's denial of his permit, and the matter is now before this Court for decision.
 Standard of Review
The Superior Court's review of a Zoning Board's decision is governed by § 452-4-69 (D), which provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, the Superior Court may not substitute its judgment for that of the zoning board if it can conscientiously find that the board's decision was supported by substantial evidence. Apostolou v. Genovesi,120 R.I. 501, 507, 388 A.2d 821, 825 (1978). As used in this context, "`Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla, but less than a preponderance.'" Lischio v. Zoning Bd. of Review, 818 A.2d 685,690 n. 5 (R.I. 2003) (quoting Caswell v. George Sherman Sand andGravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). If the zoning board's decision is affected with legal error, though, the Court must reverse said decision. Harmel Corp. v. Zoning Bd. ofReview, 603 A.2d 303, 305 (R.I. 1992).
 Analysis
On appeal, Trazi argues that the Board's decision to deny the special use permit on the findings that the addition is "not compatible with the neighboring land use," and "could hinder the future development of the Town," is arbitrary, capricious, and clearly erroneous. Trazi maintains that the Board's decision to issue a special use permit is governed by Article I, Section 6(C)(10) of the Scituate Zoning Ordinance, each section of which he has met. Section 6(C)(10) requires the following:
 "A use designated as a special use in Article II or elsewhere in this ordinance shall be permitted by the board following a public hearing if such use meets the following requirements:
 A. It will be compatible with the neighboring land uses.
 B. It will not create a nuisance in the neighborhood.
 C. It will not hinder the future development of the town.
 D. It will be in conformance with the purposes and intent of the comprehensive plan and the zoning ordinance.
 In granting a special use permit, the board may impose such additional safeguards and conditions on the proposed use as are deemed necessary in order to conform to these requirements."
Trazi contends that he has demonstrated each of the above requirements and therefore, is entitled to a special use permit.
A special use permit allows for "conditionally permitted uses."Westminster Corp. v. Zoning Bd. of Review, 103 R.I. 381, 391,238 A.2d 353, 359 (1968). A special use permit may be granted by a zoning board when the ordinance specifies the particular use authorized by special use permit, describes the conditions and procedures for the special use categories, establishes criteria for special use permits that conform to the ordinance, and complies with the constitutional due process requirements. Sec.45-24-42. In the instant matter, Scituate has specifically provided for two-family residences as a specially permitted use in RS-120 zones, the zone in which Trazi's property is located. (Scituate Zoning Ordinance Art. II, Section 2). Scituate has also established guidelines under which such a special use permit may be granted. (Scituate Zoning Ordinance Article I, Section 6(C)(10)). Therefore, these rules establish that two-family residences are permitted in RS-120, provided that the requirements for a special use permit have been met.
Trazi's primary argument is that it was clearly erroneous for the Board to declare that the two-family residence is inconsistent with the Comprehensive Plan when the Comprehensive Plan and the Zoning Ordinance specifically allow such usage. Where a town zoning ordinance specifically provides for a use by a special permit, the town has "implicitly demonstrated a legislative conclusion that the use (1) is harmonious with the other uses permitted in that district, and (2) is not to be excluded unless the standards for a special exception are not satisfied with respect to its establishment at a particular location or site." Perron v. Zoning Bd. of Review,117 R.I. 571, 574, 369 A.2d 638, 641 (1977). In other words, if a particular use is permitted by special exception, it is presumptively harmonious with other uses in the area of the property, and thus, the Board can award a permit as long as the use satisfies the standards as set out above in Art. I, § 6(C)(10) of the Ordinance.
Trazi contends that in accordance with Perron, it was a clear error of law for the Board to find that his two-family addition was inconsistent with the Comprehensive Plan when such usage is permitted under both the Comprehensive Plan and the Zoning Ordinance. As the Court in Perron recognized, if the Town has provided for a use by special permit, then that use cannot be completely prohibited by the Board as being inconsistent with the Comprehensive Plan. Perron, 117 R.I. at 574, 369 A.2d at 641. In other words, the "zoning board of review is without power to nullify the ordinance under the guise of `variances,'" or in this case the denial of special use permits. Heffernan v. Zoning Bd.of Review, 50 R.I. 26, 30, 144 A. 674, 676 (1929). Accordingly, Trazi contends that the Board is without authority to reject all two-family residences when such are provided for in the Comprehensive Plan and Zoning Ordinance; if such a use were to be completely prohibited, it would have to be done through legislative amendment.
Trazi's reliance on Perron, however, is misplaced. ThePerron rule is limited to situations in which the Board denies a permitted use under any circumstances. The Perron Court, in reviewing a zoning board's decision to deny a permit to establish a family camping center, found the following:
 "A fair reading of the board's decision . . . satisfies us that it denied the application not on the ground that the establishment of a family camping area at the particular location specified in the application would be detrimental to the public health, safety, morals and general welfare, but because it agreed with the remonstrants that to permit that use anywhere in the district and under any circumstances would be harmful in the zoning sense." Perron, 117 R.I. at 574, 369 A.2d at 641. (Emphasis added.)
The Perron Court held that the board exceeded its authority by prohibiting any family camping area, even though such use was permitted by the ordinance as a special exception. Here, however, the Board did not prohibit all two-family residences from the area. In fact, the Board appeared to indicate that if the Plaintiff were to construct his addition at the back of his home, the permit may have been granted. The hearing transcript reveals that the following colloquy took place amongst the Board members:
 "BOARD MEMBER: . . . Again, if this edition [sic] could be turned back so you see what you see right now, which is a nice looking structure as is, I'm not sure how they could object or would we.
 . . .
 BOARD MEMBER: . . . [I]s your feeling that you'd be willing to approve something — if it were not — if it were (inaudible) rear instead of next to it?
 BOARD MEMBER: I would. If we have what we have right now in terms of if you drive by the house, and that's what you saw; I wouldn't have any problem with the edition [sic].
 BOARD MEMBER: Move it toward the rear?
 BOARD MEMBER: Exactly. Exactly.
 BOARD MEMBER: I'd feel better about it as well." (Tr. at 37, 38-39.)
Were the Board to have stated that all two-family homes would be impermissible, then this Court would have found that the Board exceeded its authorized power by administratively vetoing a use conditionally authorized by the town council. Here, however, contrary to Perron, the Scituate Zoning Board did not absolutely prohibit two-family residences; rather, it denied this particular special use application for other reasons, specifically those relating to the general welfare of the community.[1]
Trazi also contends that the Board's finding that the special use permit "could hinder the future development of the Town because it could create a whole new area of two-family" was a clear error of law. According to Trazi, this finding was premised on the Board's erroneous conclusion that granting Trazi's special use permit would set a precedent requiring the Board to approve all applications for two-family homes. This concern was articulated by at least one Board member, who pondered:
 "BOARD MEMBER: I'm not sure I like it (inaudible.) If we grant this one, we're kind of writing off this neighborhood as a two-family neighborhood in town. I mean, its whatever transition there is, this is it. And this is now the — this will end up eventually two-family houses probably rented out, you know, in the future.
 BOARD MEMBER: Well, are we setting a precedent here
 . . .
 BOARD MEMBER: . . . Does that mean in the future wherever we find a two-family house or resident [sic], more than two or three, that general area becomes eligible for two-family houses?
 . . .
 BOARD MEMBER: My main concern is once you grant this one, we've written off the whole area as two-family. (Inaudible) anybody that comes around (inaudible) two-family houses in that area." (Tr. 33-34, 36.)
While some members may have expressed concern, the Board's grant of a special use permit to one individual does not establish a precedent requiring approval of all applications for a similar use. Skelley v. Zoning Bd. of Review, 569 A.2d 1054,1059 (R.I. 1990). Thus, if the Board based its decision solely on the ground that it would be setting precedent requiring approval of all requests for two-family housing, then its decision was affected by error of law. However, the record demonstrates that other Board members did not feel as though they would be creating precedent. For example, one member declared that, "I don't think it's a precedent." (Tr. at 35.) The finding that future development would be hindered by the granting of this particular permit, as it would contribute to changing the character of the neighborhood, is a factor that may be considered when deciding whether to approve a special use permit. See Pascalides v.Zoning Bd. of Review, 97 R.I. 364, 369, 197 A.2d 747, 751
(1964); Roland F. Chase, Rhode Island Zoning Handbook 141 (2000). Accordingly, the Board's finding that the special permit would hinder the future development of the Town was not clearly erroneous.
The record further reveals that Trazi failed to demonstrate that his substantial rights have been prejudiced. Applicants for a special use permit bear the burden of proving that their proposal complies with all of the requirements in Article I, Section 6(C)(10) of the Scituate Zoning Ordinance. See alsoGuiberson v. Roman Catholic Bishop of Providence, 112 R.I. 252,259, 308 A.2d 503, 507 (1973). Consistency with future development is simply one factor that Trazi was required to prove. The Zoning Ordinance also required Trazi to establish that his addition is compatible with the neighboring land uses and conforms with the Comprehensive Plan. (Article I, Section 6(C)(10)). As will be shown herein, the Board's findings that Trazi's addition is not compatible with the neighboring area and is inconsistent with the Comprehensive Plan are supported by substantial evidence and are not arbitrary, capricious, or clearly erroneous. Thus, as Trazi has not established all of the prerequisites to entitle himself to a special use permit, the Board's decision must be affirmed.
Trazi insists, though, that there is no evidence in the record which supports the Board's finding that Trazi's addition would conflict with the Comprehensive Plan's goal of maintaining the rural character of the area.[2] Without a sufficient factual basis, Trazi argues the Board's decision cannot be upheld. However, upon review of the record, this Court holds that the Board's finding that the addition was inconsistent with the Comprehensive Plan is adequately supported by substantial evidence.
It appears that in rendering its findings of fact, the Board considered evidence of the property's aesthetic features that would disrupt the existing rural atmosphere. Members of the Board recognized the following:
 "BOARD MEMBER: I was surprised to find out the two that were — that are [two-family] you couldn't tell. Now, this is going to be a huge house, and that has to be taken into consideration, too. (Tr. at 32-33) . . . I looked at the rest of the neighborhood all the way up and (inaudible) a couple there, you can't even tell they are two-family. . . .
 CHAIRMAN SPRAGUE: Well, aesthetics is a concern of the Planning Board. If this edition [sic] could be put on so that when you drive down Plainfield Pike, this is what you see, essentially what you have right now. If it could be done that way, so the edition [sic] would have to go on the back, so essentially, you wouldn't see it from the front, then aesthetically what difference would there be?
 BOARD MEMBER: . . . What I'm saying is, I'm addressing the Planning Board's concern about aesthetics. . . ." (Tr. at 36-37.)
In other words, the Board expressed concern that the size and positioning of this particular two-family residence would violate the Comprehensive Plan's goal of maintaining the town's rural character.
This Court is, of course, mindful that a zoning board may not regulate for aesthetic purposes alone. Our Supreme Court has often warned that "purely aesthetic considerations do not supply sufficient basis for the exercise of the police power." City ofProvidence v. Stephens, 47 R.I. 387, 393, 133 A. 614, 617
(1926). It follows, though, that if there are other reasons in addition to aesthetics, such as the health, safety, and general public welfare, then aesthetics may be taken into consideration. (See 2 Arden H. Rathkopf Daren A. Rathkopf, Law of Zoningand Planning § 16-2 (2005) ("[S]tate courts generally [hold] that a land use restriction may be based in part on aesthetic considerations so long as the regulation was also supported by some other non-aesthetic public purpose.")
In this case, the Board's consideration of aesthetics was not in excess of its statutory authority or an abuse of discretion because aesthetics were not the sole reason upon which the Board based its decision. "Aesthetic" is defined as "relating to that which is beautiful or in good taste." Black's Law Dictionary 52 (5th ed. 1979). Here the Board was concerned with more than just the "beauty" or "good taste" of the addition; it was also concerned with whether the special use permit was consistent with the Comprehensive Plan, would affect the future development of the community, or would maintain the area's rural character.[3] (Tr. at 40-41.) The transcript is, in fact, laden with testimony that the Board was primarily concerned with the "character" of the area and not necessarily the neighborhood's "aesthetic" beauty. For example, one Board member specifically stated that ". . . it does not comply with the comprehensive plan, and it does not preserve (inaudible) the rural areas of the town." (Tr. at 40.) Other Board members also addressed how the addition would not fit into the character of the neighborhood, by pointing out that, "I look at the rest of the neighborhood all the way up and . . . you can't even tell they (other homes) are two-family," (Tr. at 35.) and "the rest of the area all the way into the reservoir is essentially one-family with the exception of two, apparently you can't tell are two-family, and I don't think this fits in with the area at all." (Tr. at 41.)
While the Board based much of its findings on its own personal observations and knowledge, such observations and knowledge constitute probative evidence. In determining whether the requisites for a special use permit have been satisfied, "a board may consider probative factors within its knowledge . . . or may acquire adequate knowledge through observation and inspection on a view." Toohey v. Kilday, 415 A.2d 732, 737 (R.I. 1980) (seealso Salve Regina College v. Zoning Bd. of Review,594 A.2d 878, 882 (R.I. 1991). Such personal knowledge and inspection are considered competent, reliable evidence only if the Board discloses its reliance on this information on the record of the hearing. Id.; see also Restivo v. Lynch, 707 A.2d 663
(R.I. 1998). Furthermore, in making a finding of incompatibility, "a Board . . . is presumed to have special knowledge of matters that are particularly related to the administration of a zoning ordinance and of local conditions as they are affected by the provisions of the zoning ordinance." Bonitati Bros. v. ZoningBd. of Review, 99 R.I. 49, 55, 205 A.2d 363, 366 (1964).
Here the transcript clearly reveals that a number of the Board members relied heavily on and disclosed their own knowledge of the area and its present condition as a rural community. In making their observations, the Board concluded that the proposed use would contravene the Comprehensive Plan's goal for a rural atmosphere. (Tr. at 40.) The law clearly permits the Board to rely on such observations, and such knowledge may be considered substantial evidence, as the Board is deemed to have special knowledge of these matters.
Moreover, in addition to its own knowledge and observations, the Board had before it other evidence supporting its decision, particularly a letter of recommendation from the Scituate Plan Commission. Prior to the February 22, 2005 hearing, the Plan Commission provided the Board with a letter that advised:
 "The Plan Commission reviewed this case at our meeting last night. It was determined that this is not in compliance with the Comprehensive Plan as it does not preserve and protect the rural character of the Town. Also, special consideration should be given to the size, scale and juxtaposition of the proposed development."
Zoning Boards in the past have considered the advice of the Plan Commission, and therefore, this Court too finds that the recommendation is a piece of evidence upon which the Board may appropriately have relied. See Viti v. Zoning Bd. of Review,92 R.I. 59, 65, 166 A.2d 211, 214 (1960) (". . . the City Plan Commission . . . commented on the fact that the removal of the garages would eliminate a nonconforming use, and this is evidence which the board might properly consider.") superseded bystatute, § 45-24-41, as recognized in Sciacca v. Caruso,769 A.2d 578, 582-83 (R.I. 2001); Kelly v. Zoning Bd. of Review,94 R.I. 298, 303, 180 A.2d 319, 321-22 (1962).[4] Here, the Board clearly articulated that it relied on the Planning Commission's recommendation in denying the special use permit. The Chairman declared: "Findings of fact, the Board agrees with the Planning Commission that the concern — it's not compatible with the comprehensive plan. It does not preserve (inaudible) of the Town. And it's not compatible with the (inadudible) land use." (Tr. at 42.) Therefore, as the denial of the special use permit was based upon the Planning Commission's recommendation and the Board's own knowledge and observations regarding the aesthetics and character of the area, this Court finds that substantial evidence on the record supports the Board's decision.
 Conclusion
After review of the entire record, this Court finds that substantial evidence on the record supports the Board's findings of fact that Trazi's proposed addition is inconsistent with the goals of the Comprehensive Plan. The Board's decision was not arbitrary, capricious, clearly erroneous, or in excess of its statutory authority. Substantial rights of the appellant have not been prejudiced. Therefore, the Board's decision denying Trazi a special use permit to construct an addition on his home is hereby affirmed. Counsel shall submit the appropriate judgment for entry.
[1] In his memorandum, Trazi argues that the Board's decision effectively denied all two-family homes in the area. Particularly, Trazi relies on the language used by the Board in its decision that granting this special use permit ". . . could hinder the future development of the town because it would create a whole new area of two-family." (Trazi's Memorandum at 6.) However, this argument fails to take into consideration the other views and findings of the Board members who would have permitted the special use permit were the addition to be placed at the rear of the property so as not to destroy the rural character of the area. Consequently, all two-family residences were not prohibited.
[2] Although neither party has cited to any particular provision of the Comprehensive Plan, this Court's judicial notice of the Plan demonstrates that it indeed has as one of its goals the maintenance of a rural setting. For example, Section 3-3.0 provides that the "Comprehensive Plan was based on the recognition that the rigid requirements of the zoning ordinance regulating residential development was leading to the destruction of the traditional character of the Town, particularly Rural Scituate." Similarly, Section L-2.1.1 lists as one of its highest priority goals the "Protect[ion] [of] Rural Scituate through flexible land use controls."
[3] Maintenance of an area's character is distinguishable from aesthetic concerns because while aesthetics relate to beauty, a subjective feature, character is simply "that by which a thing is specially known or distinguished." Herlihy Mid-Continent Co. v.Sanitary Dist. of Chicago, 60 N.E.2d 882, 888, 390 Ill. 160, 172
(1945). A town may, for instance, seek to maintain the character of an area without concerning itself with aesthetics. For example, a city or industrial area has a character which pertains to such use, but this character in no way deals with aesthetic "beauty" or lack thereof.
[4] It should be noted that in Kelly, the Court held that the letter of recommendation, while it could be considered by the zoning board, was too conclusory to be treated as the only substantial evidence on which the board's decision was based. The Court stated:
 "There is in evidence the letter in which the director of the city plan commission concludes that the erection of the addition would result in an increased commercial use of the lot and would lower the value of surrounding properties. This letter constitutes a bare statement of a conclusion without supporting evidence and without any qualification of the writer as an expert. Neither does it appear that the record contains any evidence tending to prove that the erection of the addition would increase the commercial use of the lot or that such an increase in the commercial use would affect adversely the value of the neighboring properties." Id.
The matter here is distinguishable from Kelly. Unlike the board in Kelly, the Board here had other evidence, in addition to the letter, upon which it could rely, as it made clear in the record that it was relying on its own observations and special knowledge. Furthermore, the plan commission in Kelly made a conclusory statement regarding property values, an area over which it was not qualified as an expert. Here, however, the Plan Commission provided the Board with an advisory opinion regarding Trazi's proposal's compatibility with Scituate's Comprehensive Plan, a document over which the Commission is presumed to have special knowledge.