369 A.2d 638.

ROGER A. PERRON *vs.* ZONING BOARD OF REVIEW OF THE TOWN OF BURRILLVILLE.

FEBRUARY 17, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. The petitioner, Roger A. Perron, owns a 35-acre tract of land situated on Round Top Road, a two-laned paved state highway in the town of Burrillville. The property is zoned Farming F and the surrounding neighborhood is predominately farming and rural residential in character. The Burrillville zoning ordinance provides in 11-4.3c.2 (Rev. Ord. 1972) that, in an appropriate case and subject to the imposition of appropriate conditions and safeguards, the zoning board may grant a special exception permitting the establishment of a family camping area in a Farming F District upon a showing that it will (a) substantially serve the public convenience and welfare; (b) be in harmony with the general purpose and intent of the ordinance; and (c) not result in or create conditions that will be inimical to the public health, safety, morals and general welfare of the community.[1] Perron applied for a special exception that would permit utilization of his property for 4 family camping areas containing 153 campsites.

---

[1] In *Nani v. Zoning Bd. of Review*, 104 R.I. 150, 156, 242 A.2d 403, 406 (1968), we said that "* * * satisfaction of a 'public convenience and welfare' precondition will hinge on a showing that a proposed use will not result in conditions that will be inimical to the public health, safety, morals and welfare." Hence, requirements (a) and (c) of 11-4.3c.2 of the Burrillville zoning ordinance impose equivalent preconditions to relief.

The zoning board denied his application and on appeal the Superior Court, confining its review to a consideration of the record of the hearing before the zoning board, affirmed. We granted Perron's petition for certiorari. *Perron* v. *Zoning Bd. of Review*, 115 R.I. 906, 340 A.2d 152 (1975).

At the hearing before the board the testimony in support of the application was to the effect that family camping areas cater to and attract decent, respectable families, and that the proposed project would be operated only during 4½ months of each year, would not create a traffic hazard, and would bring new business into the community. In addition, petitioner advised the board that the State Department of Natural Resources had approved his site for the proposed use, that the state was prepared in some unspecified manner to finance the project and that the State Department of Health had inspected the location and found that it was "well suited to a camp ground," that its soil characteristics were "excellent" and that it offered "good conditions for proper disposal of sewerage."

The remonstrants' case consisted of testimony from persons living in the neighborhood. Insofar as even remotely pertinent their collective complaint was that the proposed project would be inadequately policed, improperly supervised by management and would create traffic and night lighting problems. These conditions, they said, would unduly disturb their enjoyment of their property, and for that reason they urged that the application be denied.

The board heard the case in August 1974 and about a month later in a written decision denied the application on several grounds including the following:

(1) a family camping area is a "difficult, troublesome and objectionable" kind of use and one that could be "a further drain on already limited municipal services and facilities";

(2) nearby inhabitants would not be adequately protected "from the hazards of added vehicular traffic, noise and other nuisances";

(3) added traffic congestion would have an adverse effect "on the existing residential streets which are narrow and structurally deficient";

(4) the applicant had given insufficient assurances that the adjacent residential properties would not be detrimentally affected by the plans for "parking, lighting and management operations of the facilities"; and

(5) some of the standards proposed by the applicant for the conduct of the project might not be satisfied.

A fair reading of the board's decision, viewed in the light of the evidence adduced at the hearing, satisfies us that it denied the application not on the ground that the establishment of a family camping area at the particular location specified in the application would be detrimental to the public health, safety, morals and general welfare, but because it agreed with the remonstrants that to permit that use anywhere in the district and under any circumstances would be harmful in the zoning sense. The decision thus ignores that portion of the ordinance which permits a camping area to be located in a Farming F District, subject to zoning board approval, thereby at least implicitly demonstrating a legislative conclusion that the use (1) is harmonious with the other uses permitted in that district, and (2) is not to be excluded unless the standards for a special exception are not satisfied with respect to its establishment at a particular location or site. *Hester* v. *Timothy*, 108 R.I. 376, 385-86, 275 A.2d 637, 641-42 (1971); *Nani* v. *Zoning Bd. of Review*, 104 R.I. 150, 155, 242 A.2d 403, 406 (1968). *See also Sundlun* v. *Zoning Bd. of Review*, 50 R.I. 108, 114-15, 145 A. 451, 454 (1929).

That the board thus in effect administratively vetoed a use conditionally authorized by the town council and thereby exceeded the power conferred upon it by the ordinance is not, however, the only infirmity of this decision.

In addition, most of the grounds relied upon by the board stem from the fears expressed by some of the neighbors concerning possible unfavorable conditions that might result were the application to be granted. Such fears are not an adequate basis for denying an application for a special exception. The mere possibility that adjacent properties might be adversely affected by the plans for "parking, lighting and management operations of the facilities," or that "the standards proposed" might not be satisfied, could and should have been guarded against by imposing appropriate safeguards and conditions, rather than by denying the owner an opportunity to use his property for an otherwise conditionally permitted use. *Zoning Bd. of Adjustment* v. *Dragon Run Terrace, Inc.*, 222 A.2d 315, 318 (Del. 1966). *See Crowther, Inc.* v. *Johnson,* 225 Md. 379, 384, 170 A.2d 768, 770 (1961). In a comparable situation this court in *Saini* v. *Zoning Bd. of Review,* 99 R.I. 269, 273, 207 A.2d 47, 49 (1965), said that a denial of an exception would be "* * * deemed to have been arbitrary unless the board after consideration found that it could not appropriately regulate such a use by the imposition thereon of appropriate safeguards and conditions."

We turn now to the proceedings in the Superior Court. Although the trial justice who heard the case might have entertained unarticulated doubts about the legal efficacy of some of the board's findings, he obviously felt otherwise with respect to the probative force of the evidence concerning the traffic problems that might result were the requested permission granted. On that subject, his decision concludes that the board, on the basis of its own knowledge of the area in question as well as the record evidence, was clearly justified in finding that the proposed use would create traffic congestion and a hazard that would have a disruptive effect on the tranquility of the neighborhood.

The trial justice's conclusion is unacceptable for at least two reasons. First, it rests on information purportedly obtained by board members as the result of their inspection of the property under consideration. Information obtained in that manner certainly constitutes legally competent evidence upon which a finding may rest, but only if the record discloses the nature and character of the observations upon which the board acted. *DiIorio* v. *Zoning Bd. of Review*, 105 R.I. 357, 363, 252 A.2d 350, 354 (1969); *V.S.H. Realty, Inc.* v. *Zoning Bd. of Review*, 103 R.I. 16, 18-19, 234 A.2d 355, 356-57 (1967); *Snyder* v. *Zoning Bd. of Review*, 98 R.I. 139, 143, 200 A.2d 222, 224 (1964); *Kelly* v. *Zoning Bd. of Review*, 94 R.I. 298, 303-04, 180 A.2d 319, 322 (1962). In this case, except for the statement that the neighborhood in which the premises are located is predominately farming and rural residential in character, the record does not mention any observed conditions bearing on whether the establishment of a camping area at this particular location would generate so much additional traffic that unacceptable congestion and hazard would result. Consequently, we cannot presume that the board, notwithstanding its announcement to the contrary, acted on the basis of what was seen on its view of petitioner's property. *DiIorio* v. *Zoning Bd. of Review, supra* at 363, 252 A.2d at 354; *V.S.H. Realty, Inc.* v. *Zoning Bd. of Review, supra* at 18-19, 234 A.2d at 357; *Kelly* v. *Zoning Bd. of Review, supra* at 303-04, 180 A.2d at 322.

Second, the testimonial evidence pertinent to the traffic question provides no greater support for denying the application than do the board's undisclosed observations. The record evidence most unfavorable to the application on that issue is found in the testimony of one remonstrant. He professed no expertise,[2] ventured no opinion on whether

---

[2]In *Thomson Methodist Church* v. *Zoning Bd. of Review*, 99 R.I. 675, 682, 210 A.2d 138, 142 (1965), we held that whether traffic congestion or

traffic congestion or hazard would result if the petition were granted, and said only that traffic in the vicinity was "unduly heavy."[3] Clearly, that testimony is an insufficient evidentiary prop for denying an exception. A mere increase of traffic at the location of a proposed use unaccompanied by a resulting intensification of traffic congestion or hazard at that site is not a valid zoning criterion. *Bonitati Bros. v. Zoning Bd. of Review,* 104 R.I. 170, 171, 242 A.2d 692, 693 (1968); *Thomson Methodist Church v. Zoning Bd. of Review,* 99 R.I. 675, 682, 210 A.2d 138, 142 (1965). Moreover, the testimony is ambiguous: the witness may have meant that the volume of traffic on Round Top Road was too great, or he may only have meant that the traffic problems at the site, whatever they might be, were due solely to the then poor state of repair of that state highway.[4] If the latter were the intended meaning the problem could have been solved by conditioning the grant of an exception upon repair of the highway. *Lurie v. Planning & Zoning Comm'n,* 160 Conn. 295, 278 A.2d 799 (1971). For the board to deny the application without the record disclosing an exploration of that possibility and an attempt to formulate and impose appropriate safeguards and conditions constituted an abuse of discretion.

hazard within the zoning contemplation would follow granting of an exception was a subject not within the testimonial competence of a witness lacking in expertise. *Accord, Burke v. Zoning Bd. of Review,* 103 R.I. 404, 407, 238 A.2d 50, 52 (1968); *Our Lady of Mercy v. Zoning Bd. of Review,* 102 R.I. 269, 273, 229 A.2d 854, 857 (1967).

[3]The witness' entire relevant testimony on the issue was "[i]f any of you gentlemen would care to sit in your car up around Round Top Road on the weekend, you will find traffic is unduly heavy. The road is not that great. The holes and clumps are really, really in tough shape. The road needs to be resurfaced. This, I believe, is why the campers are coming down Round Top Road so slowly. They would bounce off the road if they went fast. The road is in very, very bad repair, in addition to the fire hydrants that are available."

[4]See note 3 *supra.*

*Saini* v. *Zoning Bd. of Review, supra* at 273-74, 207 A.2d at 49.

Under the circumstances, considerations of fairness to all parties suggest that a proper disposition of the case requires a remand for further proceedings consistent herewith and in accordance with relevant provisions of G. L. 1956 (1970 Reenactment) §45-24-20, as amended by P. L. 1969, ch. 239, §48.

The petition for certiorari is granted, the Superior Court judgment reviewed is quashed, and the records certified to this court are ordered returned to the Superior Court with our decision endorsed thereon.

*Samuel A. Olevson,* for petitioner.

*Irving I. Zimmerman,* Town Solicitor, *Phillip Koutsogiane,* for respondent.