DECISION
The plaintiff, Ronald Chofay, Jr. (Chofay), appeals from a decision of the Zoning Board of Review of the City of Warwick (board) denying his application for a special-use permit to erect a four-unit condominium building in a zoning-use district that presently contains only detached single-family homes.[1] Because the board committed an error of law in determining that the mere addition of a four-unit condominium would necessarily alter the general character of the surrounding area, and because that determination prejudiced Chofay's substantial rights, the Court reverses the board's decision.
Chofay owns a 36,532 square-foot vacant lot in a Residence A-10 zoning-use district in the City of Warwick (the city).[2] Desiring to construct a dimensionally nonconforming multi-family dwelling, Chofay submitted an application to the board seeking (1) a special-use permit to build a four-unit condominium, and (2) a dimensional variance to deviate from the dimensions required for parking lots.
At an April 21, 1998 hearing on his application, Chofay produced a revised site plan that he thought obviated his need for dimensional relief[3] and offered expert testimony as to the merits of his application for a special-use permit. At that hearing seventeen neighbors expressed their displeasure with Chofay's proposal. Several other neighbors, however, signed a letter indicating that they had no objections to his proposal, and no expert testified in opposition to it.
In a written decision filed May 28, 1998, "after having viewed the premises and the surrounding area. . . [and] taking into consideration its knowledge and expertise," the board declared, among other things, (1) that the neighborhood consisted of single-family homes; (2) that "[t)here were many people present at the public hearing with objections to the proposal regarding traffic [and] devaluation[; and (3)] that the proposal would not be in keeping with [the] character of [the] area."[4]
Notwithstanding the board's acknowledgment that Chofay's application satisfied the requirements for the issuance of a special-use permit-that is, it was authorized by § 302, Table 1, #101 of the city's zoning ordinance and met "all of the criteria set forth" by that section-the board rejected the application because "[t]he proposed use as a four unit building will alter the general character of the surrounding area and impair the intent or purpose of said ordinance and the City's comprehensive plan as the area consists of single-family dwellings and is defined in the comprehensive plan as a single-family dwelling residential area." Even though Chofay disclaimed any further need for dimensional relief, the board denied him that remedy, as well, because it "would not be necessary if [he] were not requesting four (4) units
[and] because [lie] could build several single-family dwellings on the premises without the need for a variance." Chofay instituted the instant appeal in Superior Court on June 17, 1998. See generally G.L. 1956 §45-24-31(4)(a) -69 (A)
Chofay contends that the board's decision was improperly based upon the lay judgments and objections of neighbors and that the board's conclusions regarding the alteration of the general character of the neighborhood and the impairment of the ordinance and comprehensive plan are not supported by substantial evidence and are otherwise affected by errors of law. The board asserts that Chofay was mistaken in his belief that his amended site plan obviated any need for dimensional relief; and, that since dimensional relief cannot be obtained in conjunction with an application for a special-use permit, his petition was necessarily denied. See Newton v. Warwick Zoning Board, 713 A.2d 239, 242 (R.I. 1998) ("a dimensional variance [may] be granted only in connection with the enjoyment of a legally permitted beneficial use, not in conjunction with a use granted by special permit"). The "dimensional" deformities now identified by the board, however, are not those from which Chofay initially sought relief, rather, they allegedly consist of "a continuous curb cut, no landscaping along the full length of the parking area and no street trees." In any event, the board asserts that it "found that the neighborhood consisted of single family homes and that as a result the building and its use would alter the character of the neighborhood." The board does, however, "accept that if there were other existing multi-family uses in the neighborhood, [then] the proposed four-unit building would not alter the character of the neighborhood." Chofay urges the Court to disregard the board's argument to the extent that it contradicts its decision that the proposed use "meets all of the criteria set forth" in the appropriate sections of city's zoning ordinance.
In its review of the record below, the Court cannot substitute its judgment for the board's as to the weight of the evidence on questions of fact, G.L. 1956 § 45-24-69 (D). The Court may, however, "reverse . . . the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, r decisions which are:
 (1) In violation of . . . statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 . . . .
 (4) Affected by other error of law; [or]
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record."
Id.
Pointing to its factual finding that the neighborhood consists exclusively of single-family homes, the board concludes that Chofay's proposed four-unit condominium would impermissibly alter the neighborhood's general character. The board thus equates the neighborhood's general character with the uses to which it is presently put-detached single-family homes. That a neighborhood is substantially or even predominantly comprised of one-family residences, however, is of no consequence, so long as the ordinance permits other uses. Pascalides v. Zoning Board of Review of the City of Cranston, 97 RI. 364, 369-70,197 A.2d 747, 751 (1964); see also Perron v. Zoning Board of Review of the Town of Burrillville, 117 RI. 571, 574, 369 A.2d 638, 640-41 (1977) (uses permitted by special exception, now referred to as special uses, see G.L. 1956 § 45-24-31 (57), contain "implicit . . . legislative conclusion that the use . . . is harmonious with the other uses permitted in that district"). The board itself specifically found, and the record amply demonstrates, that Chofay's proposal constituted a permitted albeit a special use that otherwise met all the conditions for the issuance of a special-use permit. See generally Braun v. Zoning Board of Review of the Town of South Kings awn, 99 R.I. 105, 109, 206 A.2d 96, 98 (1965) ("[s]pecial exceptions [now referred to as special uses, see Q.L. 1956 § 45-24-31 (57)] partake of the character of a permitted use"). Accordingly, the board's denial of the application solely on the basis that it would alter the general character of the neighborhood is affected by error of law
The board concedes in its appeal that if there were other e listing multi-family uses in the neighborhood, Chofay's proposal would not alter the neighborhood's general character. Thus, the board's position would preclude the introduction of a not-yet-realized but otherwise provided for use; say, for example, the introduction of certain congregate elderly housing or bed and breakfast entities for up to four guests, both such uses, however, permissible in an A-10 district by special-use permit but neither of which presently exists in the neighborhood. Warwick Zoning Ordinance, § 300, Table I, at CDA:27.
Logic dictates that a neighborhood's existing general character not be solely equated with or strictly limited to either (1) its current uses, thus preventing all other specially permitted uses to which it has not yet been put, or (2) the purposes provided for by the city's use regulations, rendering the third standard of the city's special-use permit illusory.[5] Were it otherwise, there could never be an alteration of the character of the surrounding area by the granting of a special-use permit. A neighborhood's character must be found somewhere in between. See generally Pascalides v. Zoning Board of Review of the City of Cranston. 97 R.I. 364, 369-70, 197 A.2d 747, 751 (1954) ("The character of a neighborhood . . . is determined largely by the nature of the uses permitted in the district") (emphasis added). Here, however, the board erroneously equated the neighborhood's character with its present uses in such a way as to prohibit the granting of the special-use permit. See generally Perron v. Zoning Board of Review of Burrillville,117 R.I. 571, 574, 369 A.2d 638, 641 (1977) (condemning a board's determination that "in effect administratively vetoed a use conditionally authorized").
Finally, and even though the board does not now contest that Chofay's revised site plan obviated his need for dimensional parking relief, the board nonetheless argues that the revised site plan requires other dimensional relief relating to the curb cut, the landscaping around the parking area, and the street trees. Even assuming (doubtfully) that these elements are properly considered "dimensional," the board did not rely on these alleged infirmities in its decision below. Accordingly, this contention is outside the confines of the record to which this Court's review is limited, G.L. 1956 § 45-2469 (C). See also G.L. 1956 45-24-61
(A) ("board of review shall include in its decision all findings of fact"); Noonan v. Zoning Board of Review of the Town of Barrington,90 R.I. 466, 469, 159 A.2d 606, 607 (1960) ("court will look to the substance of the application for the purpose of ascertaining the precise relief sought by the applicant[;] . . . significant [is] the posture in which the case was presented to the board (and). . . [p]ersuasive also of the question" is the evidence presented by the applicant); Warwick Zoning Code, § 502.3, at CDA:62 (implicitly characterizing curb Cut and landscaping requirements as merely "development standards" rather than "density and dimensional requirements," § 502.3 (E)). This does not mean that Chofay is unencumbered by the requirements pertaining to curb cuts and landscaping, but only that the denial of his application cannot be affirmed on those bases.[6]
That the board may have taken a view of the area does not, by itself, invite affirmance of its decision. Although information gleaned during a view may constitute legally competent evidence upon which to base a finding, it is insufficient if the record fails to disclose "the nature and character of the observations upon which the board acted." Perron v. Zoning Board of Review of the Town of Burrillville, 117 R.I. 571, 576,369 A.2d 638, 641 (1977). Other than the Chair's assertion that "[t]he board has been Out and inspected this, by the way," Proceedings at Hearing In re: Petition No. 7966 of Ronald S. Chofay 15 (April, 21 1998), the record contains no disclosure of the nature and character of the board's observations. See Perron, 117 R.I. at 576, 369 A.2d at 641-42 ("except for the statement that the neighborhood in which the premises are located is predominantly farming and rural residential in character, the record does not mention any observed conditions bearing on whether the establishment of camping area at this particular location would generate so much additional traffic that unacceptable congestion and hazard would result[;] [c]onsequently, we cannot presume that the board, notwithstanding its announcement to the contrary, acted on the basis of what was seen on its view").
For all of the forgoing reasons, the board's decision is reversed.
Counsel shall prepare an appropriate judgment for entry.
[1] See G.L. 1956 § 43-24.69(A).
[2] The land is described as Cove Avenue, Assessor's plat 362. Lots 7 to 14. The Residence A-10 district encompasses "medium density residential use, comprising not more than one single-family dwelling unit per lot area measuring a minimum of 10,000 square feet. "Warwick Zoning Ordinance § 301.4. at CDA 24.1.
[3] The following excerpt from the hearing reveals the consensus of what was remaining before the board:
 "MR. SHEKARCHI [Chofay's counsel]: Before we get started, I'd like to make a clarification. We have made a slight change to our site plan, that we are proposing to slide the structure back eight feet more which would result in eliminating the proposed decks. The result being that we are keeping within the building envelope that we have proposed yet eliminating any possible need for parking relief
 MS. WRIGHT [clerk]: Would you like this as an exhibit?
 MR. SHEKARCHI: I would like to move., this as a petitioner's exhibit.
 MR. O'CONNOR [chair]: What? You're changing eight feel how?
 MR. SHEKARCHI: No. I am reducing the building envelope by eight feet, eliminating he decks giving more of a buffer between the neighbors and the project.
 MR. O'CONNOR All right.
 . . . .
 MR. SHEKARCHI: . . . Our proposal will be able to meet or exceed all dimensional regulations for an A-10 zone."
Proceedings at Hearing In re; Petition No. 7966 of Ronald S. Chofay 10-12 (April 21, 1998).
[4] The board unanimously decided to deny Chofay's application during an "executive session" held on May 12. 1998.
[5] The city's third standard for granting a special-use permit requires that satisfactory evidence be entered into the record that "the granting of the special use permit will not alter the general character of the surrounding area or impair the intent or purpose of this ordinance or the comprehensive plan of the city." Warwick Zoning Ordinance. § 906.3 (C)(3). at CDA:88.
[6] That Chofay intends to comply with these requirements is evident from the following exchange:
 "MR. SHEKARCHI: Mr. Chofay. the site is suitably landscaped and a minimum ten-foot wide landscape border shall) be provided around the entire perimeter except for curb cuts, and a street tree shall be required for each 50 feet of frontage in accordance "pith the standards by the city's subdivision regs.
 A. Yes."
Proceedings at Hearing In re: Petition No. 7966 of Ronald S. Chofay 41-42 (April. 21 1998).