DECISION
Before this Court is an administrative appeal from a decision by the Zoning Board of Review of the Town of South Kingstown (hereinafter "Zoning Board") voting unanimously to deny a special use permit application for the property located at 154 Post Road, South Kingstown, State of Rhode Island. This property, containing 5.31 acres of land and located in an R-40 Zoning District, is further designated as Lot 26 on the Tax Assessors' Plat 63-1 and is referred to as Eden Manor (hereinafter "Property"). Hearings on this application took place before the Zoning Board on January 19, 2005[1] and February 16, 2005.[2] Mr. and Mrs. Eden (hereinafter "Petitioners") currently operate a hotel on said premises, in accordance with a special use permit granted in 1997 to the previous owners, Roy and Rebecca Fowler (hereinafter "Fowlers"). (Tr. 1 at 4.) The Petitioners, in conjunction with seeking a three lot subdivision of the Property, appeared before the Zoning Board in accordance with § 200(E) of the Zoning Ordinances for the Town of South Kingstown (hereinafter "Ordinances"), to request a special use permit for intensification of the special use permit previously granted for the hotel operation. The Zoning Board voted unanimously to deny said application and the Petitioners filed the instant timely appeal. Jurisdiction of this appeal is pursuant to G.L. 1956 §45-24-69.
 Facts and Travel
In 1996, the Town Council for the Town of South Kingstown voted to change the zoning of this lot to R-40A, at the Fowlers' request, to permit their use of the Property as a hotel. In 1997, the Zoning Board approved a special use permit application permitting the Fowlers to rent fifteen bedrooms in connection with their operation of a hotel on said premises. (Tr. 1 at 4.) The testimony presented at the hearings applicable to this matter indicated that the Zoning Board approved the 1997 special use permit application with the condition that said use strictly conform to the site plan as it existed at that time; specifically, that the hotel would operate on 5.31 acres of land. (Tr. 1. at 8-9.) On May 10, 1999, this area returned to its original zoning, R-40, thus prohibiting the operation of any other hotel/motel; however, the continued use of said Property as a hotel was permitted pursuant to § 907(C) of the Ordinances. (Tr. 1 at 9.)
The Petitioners, through a three lot subdivision application in 2004, proposed to create two new residential lots on the Property, which would ultimately decrease the acreage of the lot that the hotel is located upon. Under § 200(E) of the Ordinances, an applicant seeking to intensify an existing special use permit — for example, by decreasing the size of the lot on which a special use is located — must apply for a new special use permit. (Tr. 1 at 9.) Although a subdivision is permissible in an R-40 zone, the Zoning Board was faced with the issue of the intensification of the special use by placing the existing hotel on a 3.54 acre lot as compared to its original 5.31 acre lot, and further whether such change would "alter the general character of the surrounding property or impair the intent or purpose of the Zoning Ordinance or the Comprehensive Plan." (Tr. 1 at 9-10.) While the Planning Board granted the Petitioners preliminary minor subdivision approval, it recommended denial of the special use permit.[3]
Several abutting landowners testified at the hearings and the objections generally were that the character of the neighborhood was already affected by the operation of the hotel and that additional residential lots, constructed on one-acre parcels, would further impact the area. Furthermore, many of the abutters had been present when the special use was initially approved, and their contention was that the permit was granted on the condition that the hotel would operate on 5.31 acres of land, in conformity with the site plan.
The Petitioners presented three witnesses at the hearings — Mr. Lloyd Eden, one of the Property's owners; Mr. Wes Grant, a professional engineer; and Mr. George Daglieri, a licensed real estate broker and appraiser. Mr. Grant and Mr. Daglieri were accepted as experts by the Zoning Board. (Tr. 1 at 11, 25, 30.) Attorney James A. Donnelly, in his representation of the abutters, presented Mr. William McGovern, whom the Zoning Board accepted as an expert real estate appraiser. (Tr. 2 at 17-19.)
Mr. Eden described the Property, specifically noting that while the Edens' have a one-hundred percent occupancy rate during the weekends in July and August, there is minimal drive-by traffic at the location because Eden Manor is advertised through a B B Association, which guests utilize to inquire about the facility. (Tr. 1 at 15.) Mr. Eden further testified that even if the subdivision were approved, the existing residential-style lighting and on-site parking would continue to accommodate the needs of the hotel, which was recently renovated including installation of a sprinkler system in conformance with the current State fire codes. (Tr. 1 at 19.)
Mr. Grant testified regarding his familiarity with the Property and his preparation of the site plan for the subdivision application. He stated that the three lot subdivision plan meets all the dimensional requirements under the Ordinances, and from an engineering perspective, he opined that a decrease in the size of the hotel's lot would not impact the Property. (Tr. 1 at 29.)
Mr. Daglieri discussed the existing condition of the Property and the surrounding neighborhood, and he opined that as long as the two new lots met the zoning requirements, their creation will "do very little to change the character of the area." (Tr. 1 at 34.) Specifically noting that although the majority of area lots are larger than the proposed lots, a number of existing lots on Post Road are one-acre in size. (Tr. 1 at 36-37.)
Mr. McGovern disagreed, stating that "we are now suggesting an increase in density, a higher intensity of the use, and as a result of that, I believe it's going to upset the character of that neighborhood." (Tr. 2 at 24.) Viewing these changes from a buyer's perspective, Mr. McGovern opined that such would negatively impact the marketability of real estate in the neighborhood and would be inconsistent with the goals and objectives of the Town's Comprehensive Plan.
The Zoning Board's decision, dated and recorded in the land evidence records on March 8, 2005, unanimously denied the Petitioners' special use permit application holding that granting a special use permit would alter the conformity of the lot with the previously approved site plan, would be a more intense use of the lot, and would alter the general character of the property and the surrounding area. On appeal, the Petitioners urge this Court to reverse the Zoning Board's decision arguing that it was clearly erroneous in light of the evidence of the whole record and an abuse of the Board's discretion.
 Standard of Review
This Court's statutory authority to review the decision of a zoning board of review is prescribed in § 45-24-69(d) as follows:
 "[T]he court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing the action of a zoning board of review, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."Salve Regina College v. Zoning Bd. of Review of the City ofNewport, 594 A.2d 878, 880 (R.I. 1991) (quoting DeStefano v.Zoning Bd. of Review, 122 R.I. 241, 245, 405 A.2d 1167, 1170
(1979)). "Substantial evidence * * * means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Review of theTown of N. Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. George Sherman Sand Gravel Co.,424 A.2d 646, 647 (R.I. 1981)). The "reasonableness" of the zoning board's action is assessed in terms of the board's reliance upon the evidence before it. Apostolou v. Genovesi, 120 R.I. 501, 508,388 A.2d 821, 824-25 (1978) (citation omitted).
 Analysis
In granting a special use permit, the Zoning Board shall require that evidence related to the standards outlined in Section 907(A)(2) of the Town Ordinances be introduced by the applicant.[4] The Zoning Board relied upon the abutters' testimony regarding the existing alteration to the area, the Planning Board's recommendation for denial, and the fact that the original special use permit was granted in strict conformity with the site plan. See Zoning Board Notice of Decision, March 8, 2005.
While the probative force of lay testimony is limited, such may be considered together with the other evidence before the Board.See Thomson Methodist Church v. Zoning Bd. of Review of theCity of Pawtucket, 99 R.I. 675, 682, 210 A.2d 138, 142 (1965). However, lay testimony alone is not an adequate basis for denying an application. Perron v. Zoning Bd. of Review for the Town ofBurrillville, 117 R.I. 571, 575, 369 A.2d 638, 641 (1977). A zoning board should not deny a special use permit application "unless the standards for its issuance are not satisfied with respect to a particular site or location." Id. (emphasis added.) If there is any evidence of probative force in the record which negates any of the conditions precedent set forth in the Ordinances, this Court should affirm a board's decision. ThomsonMethodist Church, 99 R.I. at 680, 210 A.2d at 141. This Court will not "substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact."See § 45-24-69(d). Therefore, unless this Court finds that the Zoning Board relied upon unreliable and insubstantial evidence it cannot reverse the Board's decision.
The initial special use permit that enabled this lot to be used for hotel purposes was issued with the clear condition and proviso that the development be "substantially in conformance with the site plan submitted." That site plan located a bed and breakfast style hotel of no more than fifteen rooms available for rent on a parcel of 5.31 acres. The current proposal would result in a diminution of the land supporting the existing hotel by 80,000 square feet, or thirty four percent (34%). See Decision of Planning Board, January 14, 2004. The opponents introduced the testimony of William J. McGovern, an appraiser accepted as an expert by the Zoning Board. He opined that the granting of the Special Use Permit combined with a 3-lot minor subdivision would intensify the land use at the subject site that would alter the general character of the surrounding area; therefore it would impair the intent and purpose of the zoning ordinance and Comprehensive Plan of the Town of South Kingstown. McGovern Report, Opponent's Exhibit 4; (Tr. 2 at 25-26). See Town Ordinance, Section 907(A)(2)(c).
That opinion was echoed by the Planning Board which recommended that the intensification requested in the Special Use Permit Application be denied. See Decision of Planning Board, January 14, 2004. The Zoning Board acted within its discretion in considering the recommendation of the Planning Board as it pertained to an intensification of the special use. If the same size hotel was originally approved for operation on a lot consisting of 5.31 acres, and was proposed to operate on a lot thirty four percent smaller, that by definition intensifies the use of the lot. There was sufficient evidence in the record by way of the McGovern report and testimony to support the Zoning Board's determination that this intensification would alter the general character of the surrounding area and impair the purpose of the Comprehensive Plan, thus justifying the Zoning Board's decision.
 Conclusion
After review of the hearing record, this Court finds that the Decision issued by the Zoning Board of Review, denying the issuance of a special use permit, is supported by the reliable, probative, and substantial evidence of the whole record. Accordingly, this Court affirms the Decision of the Zoning Board of Review.
[1] South Kingstown Zoning Board of Review, In Re: Petition of Lloyd and Bernadette Eden, Transcript of January 19, 2005 (hereinafter "Tr. 1").
[2] South Kingstown Zoning Board of Review, In Re: Petition of Lloyd and Bernadette Eden, Transcript of February 16, 2005 (hereinafter "Tr. 2").
[3] "The Planning Board's action is based on the following findings:
 (1) The Special Use Permit granted by the Zoning Board of Review in 1996 was specifically conditioned on the development being `substantially in conformance with the site plan submitted.'
 (2) The South Kingstown Planning Board has granted Preliminary Approval to the three lot minor subdivision filed by the applicant. This results in the diminution of land supporting the existing hotel by eighty thousand (80,000) square-feet or thirty-four (34) percent of the site on which the original Special Use Permit was conditioned in 1996.
 (3) The continued hotel use on AP 63-1, Lot 26 after the approved minor subdivision is an overintensification of use and inconsistent with the intent and the purpose of the South Kingstown Zoning Ordinance as demonstrated by #4, below.
 (4) The continued hotel use of AP 63-1, Lot 26 after the approved minor subdivision will not conform to dimensional requirements of 501.9(E)(3) of the Zoning Ordinance." (See Planning Board Decision, RE: Preliminary Review, Eden Manor, January 14, 2004.)
[4] The relevant factors to be satisfied under § 907(A)(2) are:
 (a) that the special use is specifically authorized by this Ordinance, and setting forth the exact subsection of this Ordinance containing the jurisdictional authorization;
 (b) that the special use meets all of the criteria set forth in the subsection of this Ordinance authorizing such special use; and
 (c) that the granting of the special use permit will not alter the general character of the surrounding area or impair the intent or purpose of this Ordinance or the Comprehensive Plan of the Town. In doing so, the Board shall consider, whether or not satisfactory provisions and arrangement have been or will be made concerning, but not limited to the following matters, where applicable:
 i. Ingress and egress to the lot and to existing or proposed structures thereon with particular reference to automotive and pedestrian safety and convenience, traffic flow and control, and access in case of fire, emergency or catastrophe;
 ii. Off-street parking and loading areas where required, with particular attention to the items in (A) above, and the noise, glare or odor effects of the special use permit on adjoining lots;
 iii. Trash, storage and delivery areas with particular reference to the items in (i) and (ii) above;
 iv. Utilities, with reference to locations, availability and compatibility;
 v. Screening and buffering with reference to type, dimensions and character;
 vi. Signs, if any, and exterior lighting with reference to glare, traffic safety, and compatibility and harmony with lots in the zoning district;
 vii. Required yards and other open space;
 viii. General compatibility with lots in the same or abutting Zoning Districts.