DECISION
Frenchtown Five, LLC and The Chocolate Delicacy, LLC ("Appellants") appeal the February 3, 2010 decision of the East Greenwich Zoning Board of Review ("the Board"). In that decision, the Board granted certain zoning relief to Chad Verdi and the United Methodist Church ("Applicants") for the property at 214 Main Street ("the Property"). This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69. For the reasons set forth below, the Board's decision is hereby affirmed.
 I FACTS AND TRAVEL
On February 18, 2009, the Applicants requested Dimensional Variances and a Use Variance for the Property. (Zoning Appl.) A public hearing was held before the Zoning Board of Review on June 23, 2009. (See Tr.) The Property in question contains two buildings — one that formerly housed a Methodist Church, and one that formerly housed an associated parish school. (Zoning Board Am. Decision, 2.) The Applicants intend to put a gift shop in the Church, offices in the basement of the Church, and turn the school into five condominium units. (Zoning Appl.) The buildings on the Property *Page 2 
predate any zoning regulations, and the Property is split zoned — consisting of a CD-1 (commercially zoned) portion on Main Street, and an R-6 (residentially zoned) portion on Marlborough Street. (Zoning Board Am. Decision, 2.) The zoning boundary line runs through the church, and a small rear portion of the church is in the R-6 zone. (Id. at 2-3.) The Applicants requested a use variance for the rear strip to utilize the entire building in conformity with the CD-1 portion. (Id.) Although the buildings on the Property were constructed prior to the enactment of zoning regulations, the application "requires treatment like new construction." (Id. at 3.) Accordingly, the Applicants requested relief from the building height cap of 35 feet, the maximum allowable lot coverage of 30 percent, the setback requirements in the R-6 zone, and the minimum lot size requirement in the R-6 zone. (Id.) Essentially, dimensional relief was required to bring the preexisting structures and lots into technical conformity with local zoning ordinances. (Id.) The Applicants also requested variances from on-site parking requirements and off-street loading requirements. (Id.)
The Board held a public hearing on June 23, 2009. The Applicants' attorney testified before the Board, as did Chad Vieri, the prospective purchaser and developer of the Property. (Id. at 4-5.) They testified in favor of the application, as did David Iannuccilli of 620 Main Street Associates, the business that would develop the five condominium units. (Id.) Pastor Bill Trench of the Methodist Church also spoke in favor of the application, stating that the proposed use of the property would be less intense than the current uses as a church and school. (Id.) Kathy Gray and Jim Smith, area residents, also spoke in favor of the application. (Id.) *Page 3 
Area businesspeople spoke in opposition to the application, expressing their concerns that parking in the area would be inadequate and that the Main Street business environment would suffer. (Id. at 5-6.) In support of their position, they cited a parking study performed in 2005. (Id.) This position was challenged by the Applicants' attorney, who argued that the study was out of date, and that the land use mix has changed since it was conducted. (Id. at 6.) Significantly, they noted that the Town Planning Department supported the application as important to the vitality of Main Street, in that it would support businesses that would attract customers to the area. (Id.)
After minimal discussion, the Board unanimously approved the applicants' request. (Tr. at 61-63.) The Board prepared a written decision on September 2, 2009. (See Zoning Bd.Decision.) On September 30, 2009 Appellants filed an appeal of the Board's decision to the Superior Court. On November 19, 2009 the Town of East Greenwich made an oral motion for remand to prepare a decision containing findings of fact and conclusions of law. That motion was granted, with the stipulation that all relevant notice requirements be met.
On January 21, 2010, notice was posted that an amended decision would be presented at the January 26 meeting of the Board. The meeting was later postponed to February 3, 2010, with notice being posted on the Secretary of State's website on January 29. The notice stated that "[a] new decision will be approved without reopening the hearing." No notice was provided to abutting landowners. It is undisputed that the Town Solicitor contributed to the preparation of the Amended Decision, and that he faxed *Page 4 
copies to the Board members in anticipation of the February 3 meeting. Not surprisingly, the Amended Decision was approved unanimously and without discussion.[1]
Appellants have filed a timely appeal alleging that: the procedures for adopting the Amended Decision were improper; the Amended Decision presents no evidence or findings as required by law; and the Amended Decision was clearly erroneous and was not supported by reliable, probative or substantial evidence and is arbitrary and capricious. Appellants also seek reasonable attorneys' fees and litigation expenses pursuant to the Equal Access to Justice Act.
 II STANDARD OF REVIEW
The standard by which a Superior Court is to review a decision of a zoning board is clearly set out within the Rhode Island General Laws. Upon review, the Superior Court "shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact." G.L. 1956 § 45-24-69(d). This is because "a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance." Cohen v. Duncan,970 A.2d 550, 561 (R.I. 2009) (quoting Pawtucket TransferOperations, LLC v. City of Pawtucket,944 A.2d 855, 859 (R.I. 2008)).
A Superior Court may reverse or modify a decision of the zoning board only if "substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are: *Page 5 
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." G.L. 1956 § 45-24-69(d).
A reviewing court "must examine the entire record to determine whether `substantial' evidence exists to support the [zoning] board's findings." Salve Regina Coll. v. Zoning Bd. of Review ofCity of Newport, 594 A.2d 878, 880 (R.I. 1991) (quotingDeStefano v. Zoning Bd. of Review or Warwick,122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)). The term `substantial evidence' is defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Reviewof North Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quotingCaswell v. George Sherman Sand Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981)).
 III DISCUSSION A All Relevant Procedural Requirements Were Followed
The Court Order granting the Town's oral motion to remand stated that "[a]ll relevant notice requirements for the meeting as set forth in R.I. Gen. Laws shall be followed." The Order allowed for a remand "to the Zoning Board for the preparation of a decision containing findings of fact and conclusions of law." Appellants argue that the requirements of G.L. 1956 § 45-24-66 were thus implicated for the meeting in which the *Page 6 
Board approved the Amended Decision. However, it is clear from its face that G.L. 1956 § 45-24-66 applies to hearings of zoning boards. In the instant case, the procedure was not a hearing but a meeting to adopt a decision in conformity with this Court's order. No additional evidence or testimony was presented. Rather, the decision was based on the evidence and testimony presented at the June 23, 2009 meeting. Accordingly, the meeting was a public meeting and subject to the requirements of the Open Meetings Act. G.L. 1956 § 42-46-1 et seq. While Appellants intimate that the drafting of the Amended Decision somehow offended the Open Meetings Act, this allegation is unsubstantiated both in the record and the Appellants' memorandum. There has been no allegation that the June meeting suffered from any procedural defects, and all interested parties were given the opportunity to be heard. This Court remanded the case back to the Board for preparation of a decision that contains findings of fact and conclusions of law sufficient to allow for a judicial review of the decision.
Appellants take issue with the Town Solicitor's preparation of the Amended Decision. They cite to Cunha v. Zoning Board of Reviewof West Warwick for the proposition that an attorney may not supplement a Zoning Board's decision. 2007 R.I. Super. LEXIS 22 (January 30, 2007). HoweverCunha involved a case where the attorney prepared a brief during a review in the Superior Court that attempted to salvage an otherwise unfounded Zoning Board decision. Id. at 10. In the instant case, the work product prepared by the Town Solicitor was accepted as the decision of the Board in an attempt to properly set forth the relevant findings of fact and conclusions of law. Rather than being improper, this course of action is actually encouraged by our Supreme Court. See Bernuth v. Zoning Bd. of Review ofTown of New Shoreham, 770 A.2d 396, 402 (R.I. 2001) *Page 7 
("It might be appropriate to suggest again that, because of the complicated legal questions incident to all zoning hearings, zoning boards should avail themselves of the legal service of their municipal legal departments.")
 B The Decision of the Board is Fully Supported by theRecord
In order to grant a variance, a zoning board is bound to follow the requirements of G.L. 1956 § 45-24-41(c), which "requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary."
The Amended Decision grants three distinct types of relief: a use variance for a small rear portion of the church building, a variety of dimensional variances for the lot and the structures thereon, and relief from parking and loading restrictions. Each type of relief will be discussed in turn. *Page 8 
The Use Variance
In addition to the aforementioned criteria, the "zoning board of review shall . . . require that evidence is entered into the record of the proceedings showing that:
 (1) in granting a use variance the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of the zoning ordinance. Nonconforming use of neighboring land or structures in the same district and permitted use of lands or structures in an adjacent district shall not be considered in granting a use variance; and (2) in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience. . . ." G.L. 1956 § 45-24-41(d).
The area in question is a small strip at the rear of the church that lies in an R-6 (residential) zone. The vast majority of the church lies in the CD-1 (commercial) zone. (Am.Decision, 2-3.) The Applicants sought a use variance to use the entire building for uses which are permitted by right in the CD-1 Zone. (Id.) Without a use variance, any commercial uses of the property would have to stop at the rear of the building, since it is zoned only for residential use. The Board was clear in its Amended Decision that the R-6 designation in the area behind the Church "was done to maintain the residential character of Marlborough Street." (Id. at 2.) As such, the relief granted does not "alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance." G.L. 1956 § 45-24-41(c)(3). The Board was equally clear that the hardship resulted from the fact that the church building predates any zoning regulation, and a zoning boundary line resulted in a small portion of the rear of the church being in a residential zone. (Am. Decision, 2-3.) Thus, the need for the use variance results entirely from the unique characteristics of the structure in question — that its construction and use predate zoning regulations, that a zoning boundary line was later drawn placing a small *Page 9 
portion of the rear of the building in a residential zone, and that the building is a historic structure and may not be substantially altered. (Id. at 6-7.) Finally, the Board found that there could be no beneficial use of the rear portion of the church if relief was not granted. (Id. at 7.) While the entire building could legally be put to residential use, such a result would not be physically or economically feasible, considering that the building in question is a historic church. (Id.)
The Dimensional Variances
The Applicants sought relief from the building height cap of 35 feet, the maximum allowable lot coverage of 30 percent, the setback requirements in the R-6 zone, and the minimum lot size requirement in the R-6 zone. (Am. Decision, 3.) This is because the pre-existing lots and the structures thereon do not conform to current dimensional requirements. (Id.) Based on this fact, it is clear that the hardship from which the applicants seek relief "is due to the unique characteristics of the subject land [and] structure . . ." and that "the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain." G.L. 1956 § 45-24-41(c)(1), (2). Of course, the granting of the dimensional variances in question would not alter the general character of the surrounding area in the slightest, since the changes would result in no physical alteration of the Property or the structures thereon. G.L. 1956 § 45-24-41(c)(3). The relief granted was "the least relief necessary" in that the relief goes no further than to allow the preexisting dimensional uses to conform with the letter of the present-day zoning ordinance. Finally, the hardship suffered by the owner would amount to more than a mere inconvenience. *Page 10 
The Parking Requirements
The Board also granted a variance relating to the Church and school buildings for relief from the off-street parking requirements, and to the Church building for the loading dock requirements. (Am. Decision, at 3.) Again, because the structures predate any zoning regulations, the hardship that would be suffered by the Applicants is because of the unique characteristics of the Property, and not due to any actions taken by the Applicants. The proposed residential units would require eight off-street parking spaces, while the proposed uses for the church building would require 18 off-street parking spaces. (Id. at 3.) The Applicants also requested relief from the requirement of a loading dock for deliveries. (Id. at 4.)
As for the loading dock requirement, the Board found credible the representation of an attorney for the Applicants who stated that the largest delivery the building would be receiving would be by a UPS truck, and that a loading dock would not be necessary because there was sufficient space on the street. (Id.) Opponents of the proposal cited their concerns about parking on Main Street, citing a 2005 parking study pointing to a deficit of parking spaces. (Id. at 6.) The Applicants' attorney challenged the applicability of this study by arguing that the land use mix had changed significantly since the time of the study; the Board resolved that question in favor of the Applicants. As for the residential units, the Board cited the fact that there would be a separate lot off of Marlborough Street with eight parking spaces to meet the parking needs of the condo units. (Id. at 4-5.) As for the Church building, the Applicants' attorney represented to the Board that the Applicants had obtained a mutual easement with Bank of America to share 19 bank parking spaces on the bank property. (Id. at 4.) While the spaces are *Page 11 
marked `for bank use only' between 9:00 a.m. and 4:00 p.m., the Applicants' attorney represented that the Applicants would do nothing to discourage downtown patrons from utilizing the spaces. (Id. at 5.) This evidence is sufficient to support the Board's conclusion that relief from the parking requirements would not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance. G.L. 1956 § 45-24-41(c).
Here the Board could rely not only on the ample evidence provided during the June 23, 2009 hearing, but also its "special knowledge concerning local conditions and needs as they relate to zoning."DeStefano v. Zoning Bd. of Review, City of Warwick,122 R.I. 241, 247, 405 A.2d 1167, 1171 (R.I. 1979). A decision reached by the board pursuant to such special knowledge will be upheld so long as "the record reveals the underlying facts or circumstances the board derived from its knowledge of the area."Id. (citing Perron v. Zoning Board of Review,117 R.I. 571, 576, 369 A.2d 638, 641 (1977)). Here, the Board members indicated their familiarity with the parking situation on Main Street after having heard testimony regarding the net gain in parking spaces for Main Street patrons. (Am.Decision, 62-63.)
 IV CONCLUSION
Based upon the foregoing, the appeal from the decision of the Zoning Board of the Town of East Greenwich is DENIED. Because of the outcome of this appeal, the Appellants' claim under the Equal Access to Justice Act need not be addressed. Counsel for the prevailing parties shall prepare an Order consistent with this Court's decision.
[1] This Court also notes that the Property has since changed hands, and the retail portion is operational during certain hours. A stay remains in effect with regard to the office and residential uses of the Property. *Page 1